**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X

DEJA BARBOUR, SHINNEL GONZALEZ,     )
and RAKAYYAH MASSEY,     )
    )
          Plaintiffs,     )
    )
       -against-     )
    )     **07 Civ. 3014 (RPP)**
THE CITY OF WHITE PLAINS, et al.,     )
    )
        Defendants.     )

-----------------------------------------------------------------X

## DECLARATION OF MICHAEL L. SPIEGEL IN SUPPORT OF
## MOTION FOR ATTORNEYS' FEES AND COSTS

MICHAEL L. SPIEGEL declares, pursuant to 28 U.S.C. § 1746, as follows:

1.      Scott A. Korenbaum and I represent plaintiffs Deja Barbour, Shinnel Gonzalez, and Rakayyah Massey in the above-captioned action.  I am familiar with the facts and circumstances concerning the prosecution of this action, and I submit this declaration in support of plaintiffs' application, pursuant to 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 54(d), for an Order awarding plaintiffs attorneys' fees and costs as the prevailing parties in this litigation.

### ATTORNEY BACKGROUND AND EXPERIENCE

2.      I am a solo practitioner with offices at 111 Broadway, Suite 1305, New York, NY.

3.      I attended Harvard College and City University of New York, and received my Juris Doctor degree from New York University School of Law.  I was a Root Tilden Scholar at New York University School of Law, and I clerked for the Honorable Whitman Knapp during law school.

4.      I was an associate attorney at the firm of Kostelanetz, Ritholz, Tigue, & Fink upon graduation from law school in 1984, and then joined the Legal Aid Society Criminal Defense

Division in 1986.  In 1992, I took a year's leave of absence from the Legal Aid Society to become the founding Director of a federally-funded HIV Legal Assistance Clinic at the non-profit Legal Action Center in New York City.

5.      In 1994, I moved to California and entered private practice there.  I was CJA-appointed to represent two death row clients in federal *habeas corpus* proceedings in the Northern and Eastern Districts of California: Danielson v. Calderon in 1995, and Crittenden v. Ayers in 1996. Petitioner Danielson took his own life on death row; the Crittenden proceeding is now pending in the Eastern District of California, after remand in 2010 from the Ninth Circuit Court of Appeals.

6.      In 1995, I returned to New York City and opened a solo practice focusing on police misconduct, first amendment, and death penalty constitutional litigation.  I was qualified to represent defendants facing the death penalty under the 1995 New York State capital statute, and tried a capital case to a penalty phase verdict in 2003 (People v. Alvarez, Indictment No. 1352/00, Westchester County).

7.      Since 2000, the overwhelming majority of my cases have involved constitutional claims of false arrest, malicious prosecution and/or excessive force by police officers.  I have litigated approximately 150 civil rights cases in the Southern District of New York, and I have settled police misconduct cases for amounts as high as $2,750,000.00.  Since 2005, I have been counsel to over 250 plaintiffs in the pending Consolidated RNC Litigation, 05 CV 8453, 05 CV 9484, 05 CV 9738, 05 CV 9483, 07 Civ. 7678 (RJS) (JCF), arising from mass arrests at the 2004 Republican National Convention.  Recently, in Cameron v. City of New York, 598 F.3d 50 (2d Cir. 2010), I represented the plaintiffs in a false arrest/malicious prosecution case that definitively established that it was error to admit certain testimony at trial from the criminal case prosecutor (the

2

erroneous testimony attempted to shift responsibility for initiation of a malicious prosecution from the police officer complainant to the District Attorney, a recurring issue at police misconduct trials).[1] (We obtained a plaintiffs' verdict on retrial of the case.)

8.      As a result of my experience and reputation, I am regularly consulted by practitioners in New York and other states for advice on how to handle police misconduct section 1983 cases.

9.      I have lectured at many Continuing Legal Education programs on Section 1983 law and litigation.  Most recently, on November 30, 2010, I delivered a presentation on "Section 1983 Claims for False Arrest, Malicious Prosecution & Fabrication of Evidence in the Second Circuit" as part of a Law Clerk Videoconference panel on "Issues in 42 U.S.C. § 1983 Litigation" sponsored by the Federal Bar Council for the Second Circuit.  The panel presentation was attended by approximately 185 federal district and appellate court law clerks.

10.      In July 2010, I was a faculty member at the American Association for Justice (formerly the American Trial Lawyers Association) Annual Convention Education Program.  The title of my presentation was "Section 1983 Claims for Malicious Prosecution and Fabrication of Evidence: The Fourth Amendment and/or the Due Process Clause?"

11.      I have been a member of the faculty of the annual Intensive Trial Advocacy Program at Cardozo Law School since 1993, and I have taught in the same program at the University of San Francisco School of Law.

12.      I am a member of the Civil Rights Law Panel of the Legal Referral Service of the Association of the Bar of the City of New York and the New York County Lawyers' Association.

---

[1] Scott A. Korenbaum, Esq., whom I asked to assist in this case, also assisted me in Cameron.

The Legal Referral Service qualifies attorneys at different levels of experience and competency, and I am fully qualified by the Referral Service to accept all civil rights cases.

13.     I served on the Civil Rights Committee of the Association of the Bar of the City of New York from 2007 to 2010.

14.     I am a member of the New York and California state bars; I am also a member of the bar of the United States District Courts for the Southern and Eastern Districts of New York, and the Northern and Eastern Districts of California, the United States Courts of Appeals for the Second and Ninth Circuits, and the United States Supreme Court.

15.     The people I represent in civil rights cases can only afford to retain an attorney on a contingency basis, and all of my cases are handled that way.  I do not receive an initial retainer, nor any contribution to litigation expenses, from my clients.  I am compensated based upon a percentage of any judgment or settlement, or through § 1988 fee awards or settlements.

16.     I bear all of the costs of litigation while the case is pending, and have always released the client from any obligation to pay for expenses which have been advanced if there is no recovery. For example, in 2009, I resolved a case after twelve years of litigation and two unsuccessful trials – I absorbed approximately $40,000.00 in expenses that were never recovered.  Richards v. City of New York, 97 CV 7990 (BSJ).

17.     Civil rights cases are extremely risky and involve arcane issues of law.  The New York City Law Department has described civil rights law as "the Constitution of the United States and the vastly complex area of Federal law specific to 42 U.S.C. § 1983 . . . , a complex, ever-changing area of law." (New York City Law Department Annual Report 2006, at 25.)  It is well known that only a small segment of the bar is willing to take such cases as the bulk of a law practice.

4

18.     Because the chances of losing police misconduct cases is high, I and other civil rights lawyers in New York depend on the availability of a full "lodestar" recovery if we do prevail.  *See* Perdue v. Kenny A., __ U.S. __ , 130 S. Ct. 1662 (2010) ("the 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence").

## THE COURSE OF THIS LITIGATION

19.     Following the favorable terminations of their criminal proceedings, plaintiffs commenced this action by filing a Complaint on April 16, 2007.  On March 3, 2011, each plaintiff accepted defendants' Rule 68 Offer of Judgment (attached hereto as Exhibit A are defendants Rule 68 Offers of Judgment and plaintiffs' Notices of Acceptance of Rule 68 Offers of Judgment).  The case has been litigated for nearly four full years, through complete preparation for trial (twice – a January 24, 2011, trial date was canceled at defendants' request only days before it was to commence).  On March 8, 2011, Judgment Pursuant to Rule 68 was entered in favor of each plaintiff "for the sum of Ten Thousand Dollars ($10,000.00), with the costs accrued, including reasonable attorneys' fees, in an amount to be determined by the Court."

20.     The Complaint alleged that each plaintiff had been falsely arrested and maliciously prosecuted by White Plains police officers.  The three women had walked out of a diner in the early morning hours of April 25, 2004, and observed two male friends of theirs being questioned and then arrested by police officers.   When the three plaintiffs protested the rough treatment being administered to the young men, and reacted in horror at what they were observing, they were placed under arrest by the defendants.  Their criminal cases proceeded for two years; plaintiff Massey's case was dismissed mid-trial, the other two plaintiffs were acquitted.  Thereafter, the plaintiffs contacted

me about bringing a civil rights case concerning their arrests and prosecutions.

21.     Initial pre-filing preparation of the case involved meetings with each plaintiff, consultation with their criminal defense attorneys, and obtaining documents related to their arrests and criminal prosecutions.  I obtained, read, and created a digest of the criminal trial transcript.  I prepared the Complaint filed in this case and plaintiffs' discovery requests; I responded to defendants' initial and supplemental discovery demands.

22.     There were a total of nine depositions conducted in this case.  I prepared each of the three plaintiffs for their depositions, and defended them.  I also prepared for and took the depositions of the six individual defendant police officers.

23.     I prepared for and attended five pre-trial conferences; the first with the Honorable Stephen C. Robinson, and then four pre-trial conferences with the Honorable Kenneth M. Karas. I also attended the final pre-trial conference with this Court in January 2011, where there was oral argument and rulings on motions *in limine*.

24.     I also attended a settlement conference in March 2010, with Magistrate Judge Paul E. Davison.  Subsequent to the initial meeting with Judge Davison, defendants' counsel informed me that the City of White Plains would not make any offer to settle the case – that it would proceed to trial.  Shortly thereafter, I requested that Scott A. Korenbaum, Esq., join me as co-counsel to prepare for trial.  Mr. Korenbaum is an experienced civil rights litigator who has assisted me at trial in the past, *see e.g.*, Cameron v. City of New York, 598 F. 3d 50 (2d Cir. 2010); Martinez v. Port Auth., 445 F.3d 158 (2d Cir. 2006).

25.     At no point in this litigation, prior to the March 2011 Rule 68 Offers, did defendants ever make an offer to settle this case.  Plaintiffs, on the other hand, fully engaged in efforts to settle

the case, including providing defendants' counsel with a reasonable demand when requested to do so,  and participation in settlement negotiations facilitated by Magistrate Judge Paul E. Davison. A continued settlement conference with Magistrate Judge Davison was cancelled when defendants declared that they would not settle the case.  Therefore, defendants are fully responsible for the number of hours accrued by plaintiffs' counsel in prosecuting this case to the eve of trial.

26.     At the time the Rule 68 Offer was made, the case had been fully prepared for a jury trial.  This included preparation, submission, and filing of a Joint Pre-trial Order; the submission of pre-trial motions in limine and resolution of those motions by the Court; the submission of proposed voir dire and jury instructions; and all of the other necessary preparations for a jury trial,  including preparation of an Opening, direct and cross examinations of the parties, and anticipated depositions and examinations of witnesses whom defendants announced, at the final pre-trial conference, that they proposed to call at trial.

## NUMBER OF HOURS EXPENDED

27.     Plaintiffs seek compensation for the undersigned for a total of 328.6 hours expended on the litigation to date.  Attached hereto as Exhibit B are my contemporaneous time records reflecting work on the underlying litigation and on this fee application through the date of this declaration.[2]  The time entries were made on the date the work was performed.

28.     Plaintiffs seek compensation for 137.6 hours of work performed in this case by Mr. Korenbaum.  Mr. Korenbaum, as set forth in his separate declaration and as referenced above, is an

---

[2]  As prevailing parties under Section 1988, plaintiffs are seeking compensation for the work necessary through the final disposition of this case.  To the extent that plaintiffs' counsel will be required to expend more time on this fee application or other matters arising from this litigation, or incur further expenses, supplemental supporting documentation will be provided to the Court.

experienced civil rights litigator whom I have relied upon in the past to assist me in complex litigation and at trial.  He has attached his contemporaneous time records for work he performed on the litigation to his declaration.

29.     Plaintiffs seek compensation for paralegals for a total of 69.7 hours expended on the litigation.  Attached as Exhibit C to this declaration are copies of the paralegals' contemporaneous time records.

### REASONABLE HOURLY RATES

30.     I request compensation at the rate of $625 per hour.  This is my current customary and usual rate, *i.e.*, the rate I charge in my civil rights contingency fee agreements in the event that I am to be compensated on a *quantum meruit* basis.

31.     I was last judicially awarded fees in March 2006, at the rate of $425 per hour, in Kitevski v. City of New York, 2006 U.S. Dist. LEXIS 11017, *17 (S.D.N.Y. Mar. 16, 2006).  Before that, in September 2005, I was awarded $400 per hour in Martinez v. Port Auth. of NY & NJ, 2005 U.S. Dist. LEXIS 19141, *76-77 (S.D.N.Y. Sept. 2, 2005), *aff'd*, 445 F.3d 158 (2d Cir. 2006).  Of course, those decisions were rendered many years ago.

32.     "A review of precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600 . . .  with average awards increasing over time." Vilkhu v. The City of New York, 2009 U.S. Dist. LEXIS 73696 at *13 (E.D.N.Y. June 26, 2009) (Sifton, J.), *vacated on other grounds*, 372 Fed. Appx. 222, 2010 U.S. App. LEXIS 8191 (2d Cir. Apr. 21, 2010); Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) (awarding experienced civil rights counsel fees at $600 per hour in 2008); Espinal v. Ramco Gen'l Stores, 2007 WL 998542 (S.D.N.Y. Apr. 3, 2007) (awarding $550 per hour in

2007).  These cases are also several years old.

33.     Attached hereto as Exhibits D, E and F are declarations from Alan H. Levine, Esq., Jonathan C. Moore, Esq., and Robert L. Herbst, Esq., all of whom are experienced civil rights litigators with comparable years of experience, ability and reputation to the undersigned.  Each attests that his own hourly rate matches or exceeds the hourly rate being sought herein, and that $625 per hour "is well within the bounds of hourly rates charged by lawyers of Mr. Spiegel's experience and ability."

34.     Attached hereto as Exhibit G is a survey of prevailing market rates for attorneys that was recently published in the National Law Journal.  The survey demonstrates that $625 per hour is well within the range of "prevailing market rates in the relevant community," Perdue v. Kenny A., 130 S. Ct. 1662, 1672 (2010) (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)).  The "relevant community" in this case is the Southern District of New York.  The National Law Journal survey does not cover all law firms, and it is well known among attorneys at law firms in New York that many of the firms with the highest rates do not respond to the survey.

35.     Attached hereto as Exhibit H is a printout of the "Laffey Matrix" (www.laffeymatrix.com), which is an accepted tool for establishing hourly rates for attorneys in the Washington, D.C.-Baltimore area.  Laffey v. Northwest Airlines, 572 F. Supp. 354 (D.D.C. 1983), aff'd, 241 U.S. App. D.C. 11, 746 F.2d 4 (D.C. Cir. 1984); Interfaith Comm'ty Org. v. Honeywell, 426 F.3d 694, 708-709 (3d Cir. 2005).

36.     Mr. Korenbaum seeks compensation at the rate of $450 per hour, as set forth in his accompanying declaration.  The National Law Journal survey demonstrates that $450 per hour is well within the range of "prevailing market rates in the relevant community" for Mr. Korenbaum.

9

37.    Plaintiffs also seek compensation for paralegal time at the rate of $125 per hour, which is a recognized rate in this district. <u>Rozell v. Ross-Holst</u>, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008). I hire paralegals through the Harvard Center for Public Interest Careers; they are *summa cum laude* or *magna cum laude* graduates of Harvard College who have taken time after graduation to work for my law firm before applying to law schools.

## EXPENSES

38.    Plaintiffs seek compensation for expenses in the amount of $4,932.94 to the date of the instant fee application.   Attached as Exhibit I is my invoice totaling the expenses, and documentation concerning the major underlying expenditures.

## CONCLUSION

39.    All of the time expended and expenses incurred were reasonable and necessary to properly represent plaintiffs in this case, especially in light of defendants' insistence on refusing to engage in settlement negotiations and pursuing this case to the eve of trial before making Rule 68 Offers.  As set forth more fully in the accompanying Memorandum of Law, the hourly rates of plaintiffs' attorneys and paralegals are reasonable and conform to the prevailing market rates in this district.  Plaintiffs respectfully submit that the full "lodestar" fee is warranted and should be awarded by this Court.

Dated: New York, New York
      March 14, 2011

                                   Respectfully submitted,

                                         s/
                                Michael L. Spiegel