# Exhibit C

**Michael L. Spiegel**
Attorney at Law
111 Broadway, Suite 1305
New York, New York 10006

Tel:(212) 587-8558
Fax:(212) 571-7767

**Barbour-Massey-Gonzales - Julie Gersten's Time**

| Date | Time | Activity |
|---|---|---|
| 9/28/2006 | 0.4 | Hand delivered file to Theodorelles |
| 10/17/2006 | 0.3 | Wrote and sent letter to Barbour regarding 50-H hearing |
| 1/4/2007 | 0.4 | Mailed 50-H transcript to Massey- took to post office |
| 1/24/2007 | 0.2 | mailed 50-H transcript to Barbour |
| 4/16/2007 | 1.3 | Filed complaint, created case sheet for Mike, emailed complaint to clerk's office, mailed courtesy copy to judge. |
| 4/23/2007 | 0.1 | Mailed copy of Notice of Requirement to Submit Scheduling Order to Corp. Counsel |
| 4/26/2007 | 0.2 | Prepared summons and complaint to serve City of White Plains |
| 5/22/2007 | 1.2 | Filed affidavit of service for City of White Plains on ECF and in court |
| 5/31/2007 | 0.7 | Prepared summonses and complaint to serve police officers |
| 6/1/2007 | 0.5 | Filed discovery schedule on ECF, faxed to Judge Robinson and Mr. Maria |
| | | |
| | | |
| | 5.3 | TOTAL |

**Michael L. Spiegel**
Attorney at Law
111 Broadway, Suite 1305
New York, New York 10006

Tel:(212) 587-8558
Fax:(212) 571-7767

| Date | Time | Activity |
|---|---|---|
| **Barbour** | | Patricia Choi - paralegal |
| 6/26/2007 | 0.8 | Filed affidavits of service for defendants on ECF and at clerk's office |
| 7/17/2007 | 1.5 | Looked through plaintiffs' files and prepared draft of the Initial Discovery Requests |
| 7/17/2007 | 0.3 | Sent Initial Disclosures, Stipulation and Protective Order re: Medical Info, and First Set of Interrogatories and Requests for Production of Documents |
| 7/30/2007 | 0.5 | Spoke to Shinnel Gonzalez and Rakaiyah Massey re: discovery requests (economic damages) |
| 10/12/2007 | 1 | Prepared draft for Initial Responses to Defendants' First Set of Interrogatories and Request for Production of Documents to Plaintiff |
| 10/17/2007 | 0.6 | Prepared draft for Initial Responses to Defendants' First Set of Interrogatories and Request for Production of Documents to Plaintiff |
| 10/23/2007 | 2 | Prepared draft for Initial Responses to Defendants' First Set of Interrogatories and Request for Production of Documents to Plaintiff and called Deja Barbour, Shinnel Gonzalez |
| 10/24/2007 | 0.1 | Called and left message for Rakaiyah Massey regarding Initial Responses to Defendants' First Set of Interrogatories and Requests for Production of Documents |
| 10/25/2007 | 0.1 | Called and left message for Rakaiyah Massey regarding Initial Responses to Defendants' First Set of Interrogatories and Requests for Production of Documents. |
| 10/25/2007 | 0.1 | Tried her home phone number (disconnected). |
| 10/25/2007 | 0.2 | Spoke to Rakaiyah Massey. Requested information for Initial Responses |
| 10/25/2007 | 0.1 | Called and left message for Deja Barbour regarding current address |
| 10/25/2007 | 0.2 | Spoke to Shinnel Gonzalez about her economic damages |
| 11/1/2007 | 0.4 | Called Barbour, Gonzalez, and Massey about economic damages and receipts |
| 11/28/2007 | 0.2 | Called Barbour and requested receipts (she sent them by fax, but will send them again) |
| 11/30/2007 | 0.1 | Called Rakaiyah and reminded her to give me her receipts/ pay info |

| Date | Hours | Description |
|---|---|---|
| 12/5/2007 | 0.1 | Called Rakayyah and reminded her to give me her receipts/ pay info |
| 12/7/2007 | 0.1 | Spoke to Deja Barbour about her conviction |
| 12/7/2007 | 0.5 | Revised Discovery Responses |
| | | Prepared transmittal letter, made copies of documents, and mailed Plaintiffs' |
| 12/27/2007 | 0.1 | Objections and Responses to Defendants' Demand for Interrogatories |
| 1/2/2008 | 0.1 | Prepared a transmittal letter and sent Notices of Depositions to Joseph Maria |
| | | Checked Shinnel Gonzalez's file to check on the status of her medical records and |
| 1/8/2008 | 0.2 | releases (Westchester Medical Center and White Plains Hospital). |
| | | Left message for Rakayyah Massey, prepared a transmittal letter for her releases, |
| 1/22/2008 | 0.3 | and prepared releases for her records from Liann Nelson |
| 1/22/2008 | 0.2 | Sent Rakayyah Massey her releases |
| | | Sent releases with transmittal letters to Joan Jablow and Liann Nelson (re: |
| 2/13/2008 | 0.2 | Rakayyah Massey) |
| | | Changed address on release for Liann Nelson; spoke to Rakayyah Massey on the |
| | | phone about her releases. Filled out new releases (and made copies) for New York |
| | | Presbyterian Hospital. Mailed them to Rakayyah to be signed. Created draft |
| 2/19/2008 | 0.3 | transmittal letter for releases (for Nelson). |
| | | Copied documents, weighed them, and calculated Fed ex rate (for shipment to |
| 2/27/2008 | 0.2 | White Plains). |
| | | Spoke to Rakayyah Massey on the phone regarding her upcoming deposition, |
| 2/28/2008 | 0.2 | wrote a letter to confirm that her deposition is taking place on March 11, 2008 for |
| | | her employer. |
| | | Sent check to Janet A. Denaut with copy of invoice for Rakayyah Massey's records |
| 3/10/2008 | 0.1 | from New York Presbyterian. |
| | | Called Clerk of White Plains Court to request Rakayyah Massey, Deja Barbour, and |
| | | Shinnel Gonzalez's criminal court files. Spoke to him about appearing in person to |
| | | request/pick up records. Prepared transmittal letter for releases, asked Kenny |
| | | (Clerk of Court) to send records and send bill for postage/copying fee. Created a |
| 3/11/2008 | 0.4 | self-addressed envelope for him. |
| | | Recorded break-down of copying/postage costs for the copying and mailing of |
| 3/17/2008 | 0.1 | plaintiffs' criminal court records. Mailed check with transmittal letter. |
| | | Mailed letter, check, and copy of bill to Kenny Jimenez, clerk of WP court, for |
| 3/24/2008 | 0.1 | payment for plaintiffs' criminal court records. Made copies of all documents mailed. |
| | | Left message for Kenny Jiminez. Requested Temporary Order of Protection |
| | | (Shinnel Gonzalez and Jamal Bryant) and requested copies of Jamal Bryant and |
| 4/3/2008 | 0.1 | Shane Barbour's records. |

| 4/3/2008 | 0.2 | Spoke to Kenny on the phone and mailed written request for JB and SB's records. |
| 4/3/2008 | 0.2 | He said that the Temporary Order of Protection would be in Jamal Bryant's file. |
| 4/4/2008 | 1 | Created digest (summaries of each page) of Deja Barbour's deposition transcript. |
| 4/4/2008 | 2.3 | Completed digest of Deja Barbour's depo transcript. |
| 4/4/2008 | 3 | Revised digest. |
| 4/7/2008 | 1 | Completed revised digest of Deja Barbour's depo transcript. |
| 4/7/2008 | 0.1 | Called to confirm depositions for tomorrow (Christopher and Farrelly). |
| | | Mailed letter, check, and copy of bill to Kenny Jimenez, clerk of WP court, for payment for the criminal court records of Bryant and Shane Barbour. Made copies |
| 4/9/2008 | 0.2 | of all documents mailed. |
| | | Looked to see if we turned over releases for plaintiffs' medical records. Made |
| 4/15/2008 | 0.9 | employment releases and copies for all plaintiffs. Contacted plaintiffs to sign releases. |
| 4/15/2008 | 0.2 | Spoke to Deja on the phone. Mailed her releases. Made copies for file. |
| | | Tried to fax releases to Shinnel Gonzalez; called and left message for her (faxes |
| 4/16/2008 | 0.2 | didn't go through--just got a busy signal). Tried to fax again 20 mins later. |
| 4/16/2008 | 0.1 | Called Shinnel Gonzalez. |
| 4/17/2008 | 0.1 | Called Shinnel Gonzalez. |
| | | Met with Rakayah Massey; notarized her releases; made notes to file; mailed out |
| 4/17/2008 | 0.2 | requests for her records from CBL Path and Ras Group (she will send address for Robin Raposa). |
| 4/17/2008 | 0.4 | Called and left message for Erica Aiken @ CBL Path (req Massey's employment |
| 4/22/2008 | 0.2 | records). Called Ras Group and spoke to Larisa. |
| 4/22/2008 | 0.1 | Spoke to Deja on the phone. |
| 4/21/2008 | 0.1 | Left message for Shinnel Gonzalez. |
| 4/21/2008 | 0.1 | Spoke to Rakayyah Massey on the phone. |
| 4/21/2008 | 0.1 | Left message for Rakayyah Massey |
| 4/23/2008 | 0.1 | Left message for Shinnel Gonzalez. |
| 4/23/2008 | 0.1 | Tried to fax request to Larisa (3x). |
| 4/23/2008 | 0.2 | Mailed Shinnel her releases for WP Hospital. |
| 4/24/2008 | 0.1 | Talked to Deja on phone. Answered questions regarding releases. |
| | | Created transmittal letters for faxes to Judge Karas and Frances Marinelli. Faxed |
| 4/25/2008 | 0.2 | letter. |
| | | Organized Deja's Employment Records file. Requested employment records from |
| 4/25/2008 | 0.1 | Phelps Memorial Hospital. |

| Date | Hours | Description |
|---|---|---|
| 4/28/2008 | 0.1 | Called Erica Aiken at CBL Path twice; left message regarding Rakayyah Massey's employment records. |
| 5/2/2008 | 0.1 | Called Erica Aiken at CBL Path. Checked on status of request for Rakayyah Massey's employment records. |
| 5/2/2008 | 0.1 | Called and spoke to HR at Phelps Memorial Hospital about Deja Barbour's employment records. |
| 5/6/2008 | 0.1 | Left message for Rakayyah Massey (need Robin Raposa's current address). |
| 5/6/2008 | 0.2 | Spoke to HR at Phelps Memorial Hospital. |
| 5/7/2008 | 0.1 | Spoke to Rosanna at Phelps Memorial Hospital. |
| 5/12/2008 | 0.1 | Called Shinnel Gonzalez. Lm (checked on WP releases she sent us on 4/30). |
| 5/12/2008 | 1.5 | Worked on Heffner's deposition transcript digest. |
| 5/13/2008 | 0.9 | Worked on Heffner's deposition transcript digest. |
| 5/13/2008 | 1.5 | Finished Heffner's deposition transcript digest. |
| 5/14/2008 | 1.5 | Started Lt. (Sgt) Christopher's deposition transcript digest. |
| 5/14/2008 | 0.4 | Finished Christopher's depo transcript digest and started Farrelly's depo transcript digest. |
| 5/15/2008 | 3 | Worked on Farrelly's depo transcript digest. |
| 5/16/2008 | 1.5 | Finished Farrelly's depo transcript digest, reviewed all officers' digests and emailed digests to Mike. |
| 5/20/2008 | 0.7 | Left message for Shinnel Gonzalez. |
| 5/21/2008 | 0.1 | Left message for Mr. Burn @ Phelps Memorial Hospital (DB's employment records) |
| 5/21/2008 | 0.1 | Spoke to Deja about faxing receipt from towed Expedition. Faxed White Plains Hospital releases to Shinnel's grandmother. Spoke to her grandmother twice on the phone and left message for Shinnel. |
| 5/22/2008 | 0.5 | Called Deja to check on fax. Left message for Shinnel. Spoke to Deja again. Called Deja and asked her to mail another copy. Spoke to Mary Burwell (is mailing releases for SG today). |
| 5/23/2008 | 0.2 | Finished Shinnel Gonzalez's Digest. |
| 5/27/2008 | 3 | Started Rakayyah Massey's Digest. |
| 5/28/2008 | 1 | Worked on Rakayyah Massey's Digest. |
| 5/29/2008 | 1.6 | Finished Rakayyah Massey's Digest; edited it; spoke to RM about Robin Raposa's new address. |
| 5/30/2008 | 0.7 | Left message for Rakayyah. Req. Robin Raposa's current address. |
| 6/2/2008 | 0.1 | Spoke to Rakayyah on the phone. Made note to file with Robin Raposa's current address. |
| 6/3/2008 | 0.3 | |
| Total: | 40.5 | |

**Michael L. Spiegel**
Attorney at Law
111 Broadway, Suite 1305
New York, New York 10006

Tel:(212) 587-8558
Fax:(212) 571-7767

**Barbour, Gonzalez, and Massey - Legal Assistant, Allison LaFave**

| Date | Time | Activity |
| --- | --- | --- |
| 11052010 | 1.8 | Compiled trial exhibits 1-29 from various files |
| 11092010 | 2.4 | Prepared trial exhibits 1-29 (sorted, numbered, Bates stamped, scanned, e-mailed to Maria) |
| 11102010 | 2.2 | Created 6 Defendant folders and 3 Plaintiff folders; each folder included copies of relevant exhibits, criminal court testimony |
| 11112011 | 1.2 | Brought Trial Exhibits to Big Apple Copy to be copied (3 sets); bought numbered dividers at Staples; three-hole punched ex |
| 11132011 | 2.8 | Compiled and redacted motion exhibits; created an index for the Judge's exhibit binders; photocopied/printed penal crime la |
| 11142011 | 3.8 | Edited Notice of Motion and Declaration; filed Plaintiffs' Proposed Voir Dire and Plaintiffs' Requested Jury Instructions on EC |
| 11142011 | 0.5 | ECF filed Motion to Preclude the Intro of Evidence at Trial and for Specific Jury Instructions, Memo of Law, and Declaration |
| 11142011 | 0.2 | Faxed Maria a copy of the transmittal letter to Judge Patterson that accompanied the two binders of Plaintiffs' Trial Exhibits |
| 11182011 | 1.5 | Prepared Memo, Motion, and Dec/Exhibits for Judge, then hand-delivered to district court, put criminal trial transcripts into 3 |
| 11182011 | 0.6 | Began digesting Noletti deposition |
| 11192011 | 3.7 | Completed Noletti digest, then digested Burnett's and Larrier's depositions |
| 11192011 | 0.4 | Photocopied Rakayyah's transcript and trial exhibits relevant to her; FedExed copies to Rakayyah; delivered FedEx envelop |
| 3302011 | 1.8 | Went to Rakayyah Massey's home in Bushwick so she could sign her Notice of Acceptance of Rule 68 Offer of Judgment; r |
| 3302011 | 0.4 | Prepared draft of Affidavit of Service by Mail and e-mailed it to MLS; scanned and e-mailed a copy of Barbour's Notice of Ac |
| 3302011 | 0.6 | Filed Rule 68 offers, Notices of Acceptance of Rule 68 Offers, and Affidavit of Service by Mail to Maria from each plaintiff or |

| | | |
| --- | --- | --- |
| TOTAL | 23.9 | |

f, and depositions

xhibits and assembled in binders for Judge/Defendants

aws that plaintiffs were charged with

CF, then e-mailed a copy to Patterson's secretary, Mary Cilluffo (cc: Maria); hand delivered two binders of plaintiffs' exhibits to Judge Patterson's chambers

r of SAK in Support of Motion; printed ECF notifications from January 11-14

3-ring binders

pe to drop-off site

returned to office and scanned/e-mailed Notice to MLS

cceptance of Rule 68 Offer of Judgment and Gonzalez's Notice of Acceptance of Rule 68 Offer of Judgment to MLS

n ECF

# Exhibit D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X
DEJA BARBOUR, SHINNEL GONZALEZ,    )
and RAKAYYAH MASSEY,    )
    )
            Plaintiffs,    )
    )
    -against-    )
    )    **07 Civ. 3014 (RPP)**
THE CITY OF WHITE PLAINS, et al.,    )
    )
            Defendants.    )
----------------------------------------------------------------X

## DECLARATION OF ALAN H. LEVINE IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

      ALAN H. LEVINE declares, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, as follows:

      1.      I make this declaration in support of plaintiffs' motion for attorneys' fees and costs. I have been a full-time civil rights litigator and teacher for approximately 45 years. I am currently Special Counsel to Latino Justice (fomerly, the Puerto Rican Legal Defense and Education Fund), where I participate in, and consult on, federal civil rights litigation. I am also an Adjunct Professor of Law teaching Constitutional Litigation at Brooklyn Law School. I have previously taught Constitutional Litigation at Cardozo and NYU Law Schools, and, for five years, I was an Associate Professor of Law at Hofstra Law School, where I was the Director of its Constitutional Law Clinic and taught a seminar on First Amendment law. In the Clinic, my students and I engaged in all aspects of civil rights litigation. I have lectured and written on various civil rights topics and have participated in numerous panels and symposia on civil rights

1

litigation.

2.      I began my career as a civil rights litigator in Mississippi, Alabama, and Louisiana during the Civil Rights Movement of the mid-60s.  During that time, I participated in federal civil rights actions in the district courts of all three states.  After leaving the south, I became a staff lawyer for the New York Civil Liberties Union, where I was engaged in the full-time litigation of civil liberties and civil rights cases.  Subsequently, I entered private practice, mostly in small civil rights firms.  My practice in those firms consisted almost exclusively of civil rights cases.

3.      I have handled civil rights cases at every level of the federal and New York State court systems, and served as class counsel in a number of those cases.  As a lawyer for civil rights organizations and a partner in civil rights firms, I have actively participated with colleagues in countless federal civil rights cases, both reported and unreported.

4.      I argued two civil rights cases in the United States Supreme Court: McGee v. United States, 402 U.S. 79 (1982), a Selective Service case, and Board of Education Island Trees Union Free School District No. 26 v. Pico, 457 U.S. 853 (1982), the only case in which the Court has considered the constitutionality of removing books from a school library because of their controversial points of view.

5.      Other cases presenting important civil rights issues have included a suit to enjoin racial discrimination against day laborers seeking employment, John Doe No. 1 v. Village of Mamaroneck, 462 F.Supp. 2d 520 (S.D.N.Y. 2006);  an equal protection challenge to provisions of federal law denying federal SSI benefits to legal permanent residents, Abreu v. Callahan, 971 F. Supp (S.D.N.Y. 1997); a suit alleging that the City sold a school building because its prime

2

tenant, a Lower East Side community center, had supported protest activities offensive to City officials, El Bohio Public Development Corp. v. Giuliani, 208 F. 3d 202, 2000 U.S. App. Lexis 5601 (2d Cir. 2000); a First Amendment challenge to a program of selecting protesters for tax audits, Teague v. Alexander, 662 F.2d 79 (D.C. Cir. 1981); a challenge resulting in a declaration that provisions of New York's election law violate the First Amendment, Vanasco v. Schwartz, 401 F. Supp. 87 (E.D.N.Y. 1975) (3-Judge Court); and a constitutional challenge on behalf of approximately 200 persons to a City policy pursuant to which persons arrested in connection with protest activities were denied Desk Appearance Tickets and held overnight in jail until arraignment, Mandal v. City of New York, 2007 U.S. Dist. LEXIS 83642 (S.D.N.Y. Nov. 13, 2007).

    6.    Because of my experience as a civil rights litigator in the New York City metropolitan area over many years, my experience filing fee petitions pursuant to § 1988, my familiarity with the civil rights plaintiffs' bar and various billing practices employed by such attorneys, I am fully aware of the prevailing market rates charged by civil rights attorneys in the Southern District of New York. These rates have been set by practitioners based upon the hourly rate they obtain from paying clients through traditional "inititial retainer/hourly rate" arrangements in non-civil rights cases, by rates set in civil rights contingency fee agreements should an attorney be required to obtain payment on a *quantum meruit* basis, and by the courts.

    7.    Civil rights cases are generally complex, costly, and time-consuming, and many practitioners are reluctant to take such cases because they are considered extremely unreliable as a source of income. These circumstances mean that lawyers who regularly litigate civil rights cases depend on the availability of a full lodestar recovery from fee petitions.

8.      All civil rights attorneys I am familiar with, including Mr. Spiegel, take these cases on a contingency basis, and are compensated based on a percentage of any judgement or settlement, or through § 1988 fee petitions.

9.      I have personally known Mr. Spiegel since 2004, and I knew him by reputation long before that.  I have asked him to lecture to my constitutional law class at Brooklyn Law School, and we are co-counsel on one of the cases arising from the mass arrests during the Republican National Convention in New York City in 2004, Abdell, et al. v. The City of New York, et al., 05 Civ. 8453 (RJS)(JCF).  He is an extremely capable civil rights lawyer – one of the finest in the metropolitan area – and we consult frequently regarding civil rights matters.  He is a dedicated and skilled civil rights lawyer, and should be compensated for his work in the upper range of those with his depth of experience and high level of skill and ability.

10.     Mr. Spiegel currently charges $625 per hour, which is commensurate with the rates I know to be charged by other attorneys of his skill, reputation and experience, and is in line with the prevailing market rate for civil rights attorneys in the Southern District of New York.

Dated: New York, New York
       March 10, 2011

Alan H. Levine

4

# Exhibit E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DEJA BARBOUR, SHINNEL GONZALEZ,      )
and RAKAYYAH MASSEY,                 )
                                     )
                 Plaintiffs,         )
                                     )
            -against-                )
                                     )        07 Civ. 3014 (RPP)
THE CITY OF WHITE PLAINS, et al.,    )
                                     )
                 Defendants.         )
-----------------------------------------------------------------X

DECLARATION OF JONATHAN C. MOORE IN SUPPORT OF MOTION FOR
ATTORNEYS' FEES AND OTHER DISCRETIONARY COSTS PURSUANT
TO 42 U.S.C. § 1988 AND FED. R. CIV. PROC. 54(b)

JONATHAN C. MOORE, declares, pursuant to 28 U.S.C. § 1746 and under penalty of

perjury, as follows:

1.     I respectfully submit this declaration in support of plaintiffs' application, pursuant

to 42 U.S.C. § 1988 and Fed.R.Civ.P. 54(d)(2), for an order awarding plaintiffs attorneys' fees as

the prevailing parties in this litigation.

2.     I have been a partner since 2006 with the firm of Beldock, Levine & Hoffman,

LLP, located at 99 Park Avenue, New York, New York.  Prior to that, I was a partner at the firm

of Moore & Goodman, LLP, and prior to that I operated a solo law practice for many years.  My

work concentrates on civil rights litigation, with a focus on police and governmental misconduct,

employment discrimination, First Amendment advocacy and international human rights.  I have

successfully litigated significant cases both on behalf of individuals and as class counsel in cases

involving systemic misconduct in police departments in New York and throughout the country.  I

practice in both federal and state courts, at both the trial and appellate levels.

3.      I graduated from the DePaul University College of Law (J.D. 1977), Magna Cum

Laude.  I am admitted to practice in California, Illinois, and New York, and in the United States

Court of Appeals for the Second and Seventh Circuits, the United States District Court for the

Southern, Eastern, and Northern Districts of New York, and the United States District Court for

the Northern District of Illinois.  I have additionally been admitted to practice *pro hac vice* in

numerous other federal district courts throughout the country.

4.      Among my other professional activities, I am a founding member (as well as a

CLE Lecturer and Advisory Board Member) of the National Lawyers' Guild's National Police

Accountability Project (NPAP).  I have taught civil rights litigation and trial practice at the City

University of New York School of Law and at the Practicing Law Institute.  I am also the

Founding Editor of the Police Misconduct and Civil Rights Law Report (West Group), and have

published a number of scholarly articles on police misconduct litigation.

5.      Some of my representative cases include:

> - *MacNamara, et al., v. City of New York, et al.,* 04 Civ. 8216 (RJS)(JCF).
> Putative class action on behalf of all those wrongfully arrested and
> excessively detained during the Republican National Convention in New
> York City in August/September, 2004.

> - *Burley, et al., v. City of New York, et al.,* 03 Civ. 0735
> (S.D.N.Y.)(WHP)(FM). Certified class action on behalf of all those
> wrongfully arrested and excessively detained during the World Economic
> Forum demonstrations in New York City in February, 2002.

> - *McCray, et al., v. The City of New York, et al.,* 03 Civ. 9685
> (S.D.N.Y.)(DB) Section 1983 claim for malicious prosecution on behalf of
> three young men recently exonerated of any responsibility for the rape and
> attempted murder of the Central Park Jogger in 1989.

- *Hampton v. Hanrahan,* 600 F.2d 600 (7th Cir. 1979); 446 U.S. 754 (1980), § 1983, § 1985(3) and *Bivens* claims against federal and state law enforcement officials for wrongful death of members of the Black Panther Party.

- *Carlson v. Green,* 446 U.S. 14 (1980) Established Eighth Amendment *Bivens* claim for federal prisoners for inadequate medical care.

- *Daniels et al., v. The City of New York, et. al.,* 194 F.R.D. 409 (S.D.N.Y. 2001);75 F. Supp. 2d 154 (S.D.N.Y. 1999); 191 F.R.D. 52 (S.D.N.Y. 1999) Successful § 1983 class action challenge to racial profiling by New York City Police Department in the stop and frisk without reasonable suspicion of minority youth in New York City.

- *Bartholomew v. The City of New York, et al.,* 00 Civ 3076 (WHP)(S.D.N.Y.) First and Fourth Amendment challenge to City's policy of detaining individuals arrested at demonstrations for processing through the system rather than releasing them with a Desk Appearance Ticket. Settled with agreement by the City to withdraw and not reinstate the policy and for damages in the amount of $469,000.

- *National Lawyers Guild v. Attorney General,* No. 77 Civ. 999 (PKL)(S.D.N.Y.) Federal Tort Claims Act case alleging, inter alia, wrongful surveillance, informant penetration and disruption of lawful activities by FBI and other agencies of the federal government.

- *American Civil Liberties Union v. City of Chicago,* No. 75 Civ. 3295 (N.D.Ill.) 1983 and *Bivens* class action for unlawful surveillance, informant penetration and disruption of activities of lawful political organizations by FBI and Chicago Police Department.

- *United States ex rel Hoover v. Elsea,* 501 F. Supp. 83 (N.D.Ill 1980); 669 F.2d 433 (7th Cir. 1982); 558 F.Supp. 974 (N.D. Ill 1983) Challenge to interstate transfer of state prisoner to federal custody.

- *Stewart v Kostick, et al.,* No. 86 Civ. 6979 (SDNY)(JMW) 1983 action for the death of Michael Stewart; settlement in the amount of $1,900,000, which, at the time, was the largest such settlement in the history of New York City in a wrongful death police case.

- *Gentile, et al., v. The County of Suffolk,* 129 F.R.D. 435 (E.D.N.Y. 1990), *aff'd,* 926 F.2d 142 (2nd Cir. 1991) Trial and appellate counsel; verdict for plaintiffs of $300,000 in *Monell* claim against County of Suffolk.

- *King v. Conde and Gentile, et al., v. The County of Suffolk,* 121 F.R.D. 180 (E.D.N.Y. 1988) Most widely cited decision in Second Circuit and in other Circuits establishing presumptive discoverability of police officer personnel files in 1983 action.

- *Dwares v. City of New York,* 985 F.2d 94 (2nd Cir. 1993) Court held that persons peacefully demonstrating are entitled to police protection from private violence.

- *Vann v. City of New York,* 72 F.3d 1040 (2nd Cir. 1995) Successful appeal from grant of summary judgment on plaintiff's claim that the City of New York was deliberately indifferent to the need to monitor abusive police officers who were returned to active duty.

- *Kaufman v. Rivera, et al.,* 95 Civ. 5667 (JFK)(S.D.N.Y. Oct. 4, 1996) Decision denying motion to dismiss in strip search case on grounds of 11th Amendment immunity and qualified immunity.

- *Dusenbury v. The City of New York, et al.,* 1999 WL 199072 (S.D.N.Y. April 9, 1999) State interference in familial association rights is actionable even without permanent physical separation. Settled for $2,750,000, the third highest award at the time in the City of New York in a non-death, police misconduct case.

- *Circulo de la Hispanidad v. City of Long Beach, et al.* 00 Civ. 1463 (ADS)(ETB)(E.D.N.Y. 2002) Trial counsel; jury verdict of $475,000 to plaintiff for violation of First Amendment rights. Separate decision awarding attorneys fees.

- *Raniola v. Bratton,* 2003 WL 1907865 (S.D.N.Y. April 21, 2003) Trial counsel; verdict for plaintiff of $470,000 in sexual harassment/retaliation case against New York City Police Department of $470,000. Court awarded combined attorneys fees and costs of $640,902.

6.     I have known Mr. Spiegel for over twenty years.  In 1996, we were co-counsel in the *Dusenbury* case, *supra*.  As noted above, I am also lead counsel in *MacNamara, et al., v. City of New York, et al.,* 04 Civ. 8216 (RJS)(JCF), a putative class action on behalf of all those wrongfully arrested and excessively detained during the 2004 Republican National Convention. Mr. Spiegel represents several hundred individuals who have also brought actions arising from

Page 4 of 6

mass arrests during the RNC. During the course of this intense, long-running, consolidated litigation, I and others in my firm have worked closely with Mr. Spiegel. As a result of his diligence, and the considerable knowledge and skill that he has developed in litigating police misconduct actions in the course of his practice, he has been one of the lawyers at the forefront of advancing the consolidated RNC litigation as a whole.

7.     Based upon our close work together on *Dusenbury* and over the past six years on the RNC cases, and my knowledge of his reputation among other members of the bar, I know Mr. Spiegel to be an extremely accomplished and diligent attorney who has accumulated considerable knowledge and skill in the field of police misconduct constitutional litigation, which has been and remains the focus of his practice. He has lectured and taught in this area of the law, and I have consulted with him, just as he has consulted with me, on issues relevant to our civil rights practices.

8.     Because of my own experience as a civil rights litigator with an office in the Southern District of New York, and my knowledge of the hourly rate charged by other members of the bar who represent civil rights plaintiffs, I am aware of the current prevailing market rate for attorneys of Mr. Spiegel's experience, skill, and reputation. His rate of $625 per hour is well within the range of hourly rates charged by attorneys of his skill and experience -- my own rate, for example, is higher than Mr. Spiegel's.

Dated:      New York, New York
            March 11, 2011

                                        JONATHAN C. MOORE, Esq.

# Exhibit F

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
DEJA BARBOUR, SHINNEL GONZALEZ,  )
and RAKAYYAH MASSEY,       )
               )
         Plaintiffs,  )
               )
     -against-      )
               )  **07 Civ. 3014 (RPP)**
THE CITY OF WHITE PLAINS, et al.,  )
               )
        Defendants. )
-------------------------------------------------------------------X

### DECLARATION OF ROBERT L. HERBST, ESQ., IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

   ROBERT L. HERBST, Esq., affirms as follows under penalty of perjury pursuant to 28 U.S.C. § 1746:

   1.  This declaration is respectfully submitted in support of plaintiffs' application, pursuant to 42 U.S.C. § 1988, for an order awarding plaintiffs' counsel attorneys' fees and costs as the prevailing party in this litigation.

   2.  I am a partner in the firm of Giskan Solotaroff Anderson & Stewart LLP, 11 Broadway, Suite 2150, New York, New York.  In order to assist the Court in evaluating my declaration, I will describe briefly my professional background.  I have been an active constitutional and civil rights lawyer for most of the years since my graduation from Yale Law School in 1972.  I began my career as a federal prosecutor in Chicago and Philadelphia, and as Executive Assistant District Attorney in Brooklyn, New York.  Since 1983, I have had an active trial and appellate practice in both state and federal courts throughout the New York City area, in particular in the fields of civil rights, discrimination in employment, housing and other

spheres, police and other governmental misconduct, criminal defense, class actions, and other litigation.

3.      Much of my work is compensated through traditional hourly fee arrangements, or pursuant to fee-shifting statutes.  Accordingly, based on my experience practicing law in New York City for over thirty years, I am fully aware of the prevailing market rates charged by attorneys in New York City and the Southern District of New York, especially those that specialize in federal court civil rights litigation.  Indeed, since in my own career I have submitted Section 1988 fee applications in connection with my own cases and cases handled by firms of which I have been a member, I am generally knowledgeable about prevailing rates.

4.      Civil rights cases are extremely risky.  As a general proposition, more often than not verdicts are in favor of defendants.  Because the chances of losing civil rights cases are so great, I and other civil rights lawyers in the Southern District depend on the availability of a full lodestar recovery if we prevail.  In addition, because of the risk involved in taking such cases, there are very few lawyers who are willing to devote a substantial part of their practice to civil rights litigation.

5.      The people I represent in these matters, for the most part, are unable to afford even a token retainer fee, or an hourly billing arrangement.  I take these cases on a contingency basis, and am compensated based on the portion of any judgement or settlement obtained, or through fee petitions.

6.      I have known Michael L. Spiegel for over fifteen years.  I know him as one of the most experienced and able civil rights lawyers in the metropolitan area.  I have consulted with him on various issues, as he has with me, when they have arisen in litigation.  He is a dedicated

2

and skilled civil rights lawyer, and should be compensated for his work in the highest range of those with his depth of experience and high level of skill and ability.

7.     I understand that Mr. Spiegel currently charges $625 per hour and is seeking compensation in this case at that hourly rate.  Mr. Spiegel's rate is lower than my current customary hourly rate and is well within the bounds of hourly rates charged by lawyers of his experience and skill.

Dated: New York, New York
      March 14, 2011

Robert L. Herbst

3