UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

DEJA BARBOUR, et al.,                                      )
                                                           )
                              Plaintiffs,                  )
                                                           )        07 Civ. 3014 (RPP)
          -against-                                        )
                                                           )
THE CITY OF WHITE PLAINS, et al.,                          )
                                                           )
                              Defendants.                  )
----------------------------------------------------------------X

DECLARATION OF SCOTT A. KORENBAUM IN SUPPORT
OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND
OTHER DISCRETIONARY COSTS PURSUANT TO 42 U.S.C.
§ 1988 AND FED. R. CIV. PROC. 54(d)

SCOTT A. KORENBAUM declares, pursuant to 28 U.S.C. § 1746 and under penalty of

perjury, as follows:

        1.      Michael L. Spiegel, Esq. and I represent plaintiffs in the above-referenced action.

I submit this declaration in support of the motion of plaintiffs Deja Barbour, Shinnel Gonzalez

and Rakayyah Massey for their reasonable attorneys' fees and other discretionary costs, pursuant

to 42 U.S.C. § 1988 and Fed. R. Civ. Proc. 54(d)(2), for the work I performed on their behalf.

        2.      I am an attorney in good standing, admitted to practice law in the States of New

York  and New Jersey, and in the United States District Courts for the Southern and Eastern

Districts of New York, and the District of New Jersey.  I am also admitted to practice before the

United States Court of Appeals for the Second Circuit, and the United States Supreme Court.  I

was admitted to practice law in the State of New York and the Southern District of New York in

1989.

        3.      Since 2000, I have been a solo practitioner in Manhattan.  Since 2004, I have

maintained my office at 111 Broadway, Suite 1305.

4.      In late April, early May 2010, Michael L. Spiegel requested that I assist him in connection with his representation of the plaintiffs.  As I discuss below, Mr. Spiegel and I have a longstanding relationship in which I appear as co-counsel or of counsel with respect to police misconduct matters that he anticipates may go to trial.  Given our long history of working together, I agreed without hesitation.  My work on behalf of the three plaintiffs began in the beginning of May 2010, with the filing of my Notice of Appearance.  I turned my full attention to this matter in October 2010, following the September 24, 2010, Order of Judge Karas, to whom this case was previously assigned, requiring the filing of a Joint Pretrial Order by October 29, 2010.

A. The Requested Hourly Rate of $450 Is Reasonable.

5.      On behalf of the plaintiffs, I am seeking to recover attorneys' fees at the hourly rate of $450 for my work in this matter.  In making this request I have assessed the rates of other attorneys like myself who have been admitted to the Bar for 22 years, and who have attained a similar level of expertise in the area of civil rights litigation in general, and police misconduct matters in particular.  In connection with this application, I submit the Declaration of Matthew D. Brinckerhoff, dated March 8, 2011, a copy of which I annex hereto as Exhibit A.

6.      Following two years of employment with Shereff, Friedman, Hoffman & Goodman, I joined the public sector.  From July 1990 to July 1995, I served as an Assistant Corporation Counsel with the General Litigation Division of the New York City Law Department, during which I handled numerous actions involving claims of police misconduct, employment discrimination and other claims of constitutional violations that were brought

against the City of New York and its employees.  Given the General Litigation Division's

structure at the time, I handled each matter from inception through trial.

      7.     I re-entered private practice in 1995.  Between 1995 and November 2000, I

worked for a number of firms, continuing to specialize in the area of police misconduct litigation.

      8.     Since November 2000, when I began my own practice, I have continued to

specialize in the area of civil rights litigation in general, and police misconduct and employment

discrimination in particular.  In addition to my private practice, I was a Professor of Legal

Writing at the Benjamin N. Cardozo School of Law for approximately six and a half years, and I

volunteer my services during the School's Intensive Trial Advocacy Program.  I am currently on

the employment and police misconduct panels of the Legal Referral Service of the NYC Bar

Association, as well as the employment law panel of the National Employment Lawyers

Association.

      9.     My experience, at both the appellate and trial levels, in handling claims of police

misconduct and other civil rights litigation includes the following matters, among others:

     A.     *Cameron v. City of New York*, 598 F.3d 50 (2d Cir. 2010) (successfully argued that the district court erred in admitting unduly prejudicial opinion testimony in an action involving claims of police misconduct).

     B.     *Coggins v. County of Nassau*, Docket No. 08-3389, 2010 U.S. App. LEXIS 1876 (2d Cir. Jan. 28, 2010) (on interlocutory appeal involving defendant's claim of absolute immunity, successfully argued that the district court did not err in denying the police officer's motion to dismiss), *cert. denied*, (Docket No. 10-237 Jan. 18, 2011).

     C.     *Luca v. County of Nassau*, Docket No. 08-3384, 2009 U.S. App. LEXIS 18631 (2d Cir. Aug. 19, 2009) (successfully argued, *inter alia*, that the district court did not abuse its discretion in fashioning an award of front pay spanning twenty-five years).

D.    *Zellner v. Summerlin*, 494 F.3d 344 (2d Cir. 2007) (successfully argued that the District Court erred in granting judgment as a matter of law to defendants on the grounds of qualified immunity in an action involving claims of police misconduct).

E.    *Skehan v. Village of Mamaroneck*, 465 F.3d 96 (2d Cir. 2006) (in an action involving claims of retaliation brought pursuant to the First Amendment and Equal Protection Clause, successfully obtained dismissal of the Equal Protection claim in an interlocutory appeal on behalf of the Village's Board of Trustees);

F.    *Martinez v. Port Auth.*, 01 Civ. 721, 2005 U.S. Dist. LEXIS 19141 (S.D.N.Y. Sept. 2, 2005) (co-counsel at trial and appeal in action for false arrest and malicious prosecution, jury verdict in the amount of $1.1 million dollars reduced to $464,000), *aff'd*, 445 F.3d 158 (2d Cir. 2006);

G.    *Duke v. County of Nassau*, 63 Fed. Appx. 558, 2003 WL 1970498 (2d Cir. Apr. 25, 2003) (in an action involving allegations of police brutality involving the killing of an unarmed citizen in which the jury awarded more than $2,000,000, successfully argued that the District Court did not err in dismissing a holdout juror);

H.    *Munafo v. Metropolitan Transp. Auth.*, 277 F. Supp.2d 163 (E.D.N.Y. 2003), *aff'd*, 381 F.3d 99 (2d Cir. 2004) (unsuccessfully argued in First Amendment action that the jury's verdict was fatally inconsistent given the jurors' post-verdict colloquy with the district court that they erroneously filled out the verdict sheet);

I.    *Tolbert v. Queens College*, 242 F.3d 58 (2d Cir. 2001) (in an action against a division of CUNY, successfully argued that the District Court erred in granting judgment as a matter of law to defendants in an action brought pursuant to Title VI);

J.    *Flores v. City of Mount Vernon*, 41 F. Supp.2d 439 (S.D.N.Y. 1999) (obtained summary judgment on plaintiff's behalf on the grounds that the defendants' decision to seize her and subject her to a strip search violated her rights protected by the Fourth Amendment to the United States Constitution, as well as established *Monell* liability against the City of Mount Vernon--case settled mid-trial for $365,000).

10.    In addition to the work identified above, I am frequently retained by counsel to

assist them at both the trial and appellate levels.  For example, Frederick K. Brewington Esq., a

widely-known and respected civil rights practitioner who primarily practices in the Eastern

-4-

District, routinely retains my services to handle his post-trial and appellate work.

11.     Mr. Brewington retained my services in *Zellner v. Summerlin*, 494 F.3d 344 (2d Cir. 2007).  In *Zellner*, the Second Circuit agreed with my legal arguments that the issue of qualified immunity was for the Court alone to decide, and that defendants seeking to avail themselves of qualified immunity waive this affirmative defense if they do not request the jury to answer special interrogatories concerning disputed issues of fact bearing on the issue of qualified immunity.

12.     Mr. Brewington also retained me to represent his client in *Duke v. County of Nassau*, 63 Fed. Appx. 558, 2003 WL 1970498 (2d Cir. Apr. 25, 2003).  In *Duke*, the Second Circuit affirmed a jury verdict of more than $2,000,000, in which we successfully argued that the District Court, in an action involving allegations of police brutality involving the killing of an unarmed citizen, did not err in dismissing a juror during deliberations because he was allegedly a holdout.

13.     Other firms also routinely retain my services to assist them with their appellate work.  In addition to my active appellate practice, I have handled scores of cases involving claims of police misconduct and employment discrimination that ended in favorable settlements for my clients.

14.     Under the circumstances, and as discussed in the accompanying memorandum of law, an hourly rate of $450 is reasonable for an attorney with 22 years of experience.  In support of this request, I submit the Brinckerhoff Declaration, and the following information.

15.     My customary and usual rate is $450 per hour.  This is the rate that I charge in my civil rights retainer agreements in the event I am to be compensated on a *quantum meruit* basis

(*e.g.*, if I were to be discharged by a client who was ultimately successful in the litigation).  With respect to matters brought in the Southern District of New York, in *Reddy v. The Salvation Army*, 06 CV 5176 (SAS) (AJP), by Order dated October 3, 2008, Magistrate Judge Peck approved my rate of $400/hr. in connection with a proposed sanctions motion.  A copy of the October 3, 2008 Order is annexed hereto as Exhibit B.

16.     In *Martinez v. Port Auth.*, 01 Civ. 721, 2005 U.S. Dist. LEXIS 19141 (S.D.N.Y. Sep. 2, 2005), Judge Castel awarded $325/hr. for the work I performed on plaintiff's behalf in 2004.  *Id*. at *3.

17.     Most recently, in *Luca v. County of Nassau*, I served as appellate counsel to Mr. Brewington.  Following the Second Circuit's affirmance of the judgment in all material respects, see *Luca v. County of Nassau*, Docket No. 08-3384, 2009 U.S. App. LEXIS 18631 (2d Cir. Aug. 19, 2009), Judge Block awarded attorneys' fees at the rate of $350/hr. for the work I performed. *Luca v. County of Nassau*, 698 F. Supp.2d 296 (E.D.N.Y. Jan. 26, 2010).

18.     In *Luca*, even though my customary rate at the time plaintiff submitted her supplemental fee application was $400/hr., I only requested $350/hr. because *Luca* was an Eastern District case, thereby requiring the application of Eastern District rates to the services I performed even though my office was in the Southern District.  *See, Simmons v. New York City Trans. Auth.*, 575 F.3d 170 (2d Cir. 2009); *Luca*, 698 F. Supp. 2d at 300, 303-04.

19.     In awarding Ms. Luca my requested rate of $350/hr., Judge Block recognized the value of my services.  Referring to my success in *Zellner v. Summerlin*, 494 F.3d 344 (2d Cir. 2007), and on appeal in *Luca*, Judge Block wrote:

>     In *Zellner*, after the district court vacated a jury verdict in favor of

the plaintiff, Korenbaum prevailed upon the Second Circuit to reverse the district court and reinstate the jury's verdict. . . .  The scope of this victory attests to Korenbaum's appellate skills and supports the proposition that a reasonable paying client would seek him out and pay him a substantial fee to defend a favorable verdict on appeal.

In this case, Korenbaum achieved a total victory over his adversary on all the substantive issues raised by the County's appeal. The only issue resolved in the County's favor--the fee remand--derived from the intervening opinion in *Simmons*.  The issuance of a Summary Order by the appellate court succinctly disposing of all the County's substantive claims is testament to Korenbaum's appellate skills.

The Court therefore finds that a reasonable, paying client would be willing to pay Korenbaum's requested rate of $ 350 per hour for his appellate services. *Once again, Korenbaum functioned as a partner, not a senior associate; the hourly rate of $ 350 is solidly within the current range of rates for partners in the Eastern District.*

*Luca*, 698 F. Supp. 2d at 304-05 (emphasis added).

B. <u>My Relationship To Mr. Spiegel</u>

20.     I have known and worked with Mr. Spiegel for approximately 13 years.  We first met in 1997, while we were representing women in unrelated cases who were subjected to unconstitutional strip searches.  Since then, Mr. Spiegel and I have maintained a close professional relationship.

21.     In July 2004, I moved my office to 111 Broadway, where Mr. Spiegel and I maintain our offices in the same suite.  Since then, we have frequently collaborated on our police misconduct cases, both formally and informally, and, whenever his cases have gone, or will go, to trial, he asks me to assist him.

22.     For example, in *Martinez v. Port Auth.*, *supra*, I served as Mr. Spiegel's co-counsel at trial and on appeal in an action for false arrest and malicious prosecution.  The jury

returned a verdict in the amount of $1.1 million dollars, which Judge Castel remitted to $464,000.  The Second Circuit affirmed Judge Castel's decision.  *Martinez*, 445 F.3d 158 (2d Cir. 2006).

23.    In *Cameron v. City of New York*, 06 Civ. 7798 (PAC), Mr. Spiegel again turned to me to assist him at trial.  While the jury originally returned a defendants' verdict, we prevailed on appeal.  *Cameron v. City of New York*, 598 F.3d 50 (2010).  Upon retrial in September 2010, the jury returned a plaintiffs' verdict.

24.    Most recently, Mr. Spiegel requested that I assist him in the following consolidated actions: *Crosby & Daniels v. City of New York, et al.*, 09 Civ. 9693 (SAS) (JCF); *Reis v. City of New York, et al.*, 09 Civ. 9694 (SAS) (JCF).  These consolidated actions involved allegations of unlawful sting operations by the Manhattan South Vice Enforcement Squad in the form of targeting gay men for prostitution at "porn shops" in Manhattan.  Again, given our years of working together, Mr. Spiegel brought me in to assist him in the discovery phase of the litigation, and, if necessary, to serve as his trial co-counsel.

25.    In this case, as in <u>Martinez</u> and <u>Cameron</u>, <u>supra</u>, Mr. Spiegel asked me to take primary responsibility for the pretrial submissions, including the joint pretrial order, plaintiffs' proposed jury instructions, voir dire and motions *in limine*, as well as to address legal issues that would arise during the course of the trial.  As evidenced by my time sheets, a copy of which are annexed hereto as Exhibit C, I performed these tasks.

26.    Mr. Spiegel and I agreed upon a division of labor in which he would take primary responsibility for the opening statement, cross-examination of the defendant officers, and the closing argument.  In turn, I would prepare for and conduct the direct examinations of the

plaintiffs.  Again, I performed these tasks.  See Exhibit C.

27.     My time records in this litigation reflect my time from May 3, 2010, when I first
filed my Notice of Appearance, through the date of this declaration.

28.     The attached statement of time is based on contemporaneous time records.  I enter
my time directly into my word processing program upon completion of the task at hand or at the
end of the day.

29.     As indicated by my time sheet, the work I performed included the following for
which plaintiffs seek to recover their costs and reasonable attorneys' fees:

- reviewing the plaintiffs' respective deposition and/or 50-h Hearing transcripts;

- reviewing and analyzing the criminal trial transcripts, as well as the defense
  attorney files for the clients, as well as Jamal Bryant and Shane Barbour;

- reviewing the defendant officers' deposition testimony to assist in the preparation
  of the Joint Pretrial Order, the preparation of motions *in limine*, and to assist Mr.
  Spiegel in his examinations of the officers at trial;

- meetings with Mr. Spiegel to discuss the facts underlying our clients' theories of
  liability, as well as the facts helpful and harmful to the case;

- drafting the Joint Pretrial Order;

- meetings with Mr. Spiegel to discuss the division of labor for trial, as well as the
  substance of motions *in limine*;

- meetings with the clients to prepare them for trial;

- meetings with Mr. Spiegel to discuss trial strategy, including reviewing drafts of
  his opening statement, theories of cross-examination of the officers and how to
  present the negative facts of alcohol use to the jury;

- drafting the motions *in limine*, including reviewing the entire case file to insure a
  complete set of motions, drafting the moving declaration and memorandum of law
  in support of the motions, and conducting the relevant legal research in support of
  the motions;

- reviewing the defendants' papers in opposition to plaintiffs' motions *in limine*, including preparing for, and attending, the January 21, 2011 final pretrial conference/settlement conference;

- following the adjournment of the final pretrial conference, preparing anew for the March 14, 2011 trial; and

- conducting legal research regarding the issue of whether the Rule 68 Offers of Judgment included costs and attorneys' fees, and working on the motion papers in support of the instant fee application.

30.     Based upon my calculation of my time, I have incurred $58,365.00 in attorneys' fees on plaintiffs' behalf, which represents 129.7 hours at an hourly rate of $450, for the work I performed as of the date of plaintiffs' acceptance of the Rule 68 Offers of Judgment.  I have not incurred any expenses.

31.     I have also incurred $3,555.00 in attorneys' fees for the work I performed on this fee application, which represents 7.9 hours at an hourly rate of $450.  Again, I have not incurred any expenses.

32.     The fees and costs set forth herein do not include any further work which may be necessary on this motion (such as a Reply to the defendants' Opposition), or work to be performed by me in response to the Court's actions with respect to this fee application, including any appeal the parties may take.  If warranted, plaintiffs will supplement their request for fees and costs to reflect all work done on this matter from this point forward.

E. Conclusion.

33.     In matters involving claims of civil rights, I virtually always work on a contingency basis.  I am compensated based on the portion of any judgment or settlement obtained, or through attorney fee petitions.  The instant matter is no different.  I will be

compensated on the basis of the instant fee petition.

34.     As he had done numerous times in the past, Mr. Spiegel asked me to try this case with him.  Once Judge Karas issued his September 24, 2010 Order, requiring the filing of a Joint Pretrial Order by October 29, 2010, I logged the hours necessary to represent successfully our clients at trial.  As outlined above, I reviewed all trial and deposition transcripts and document production, drafted the pretrial submissions, including the motions *in limine*, prepared the examinations of Ms. Barbour, Ms. Gonzalez and Ms. Massey, and otherwise assisted Mr. Spiegel in getting this case trial ready.

35.     In sum, all of the time I expended was reasonable and necessary to properly represent plaintiffs.  On their behalf, I submit that they be awarded costs and attorneys' fees totaling $61,920.00 for the work I performed on their behalf.

Dated: New York, New York
       March 11, 2011

                                        _____
                                                    /s
                                        Scott A. Korenbaum

-11-