**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

DEJA BARBOUR, SHINNEL GONZALEZ,       )
and RAKAYYAH MASSEY,                  )
                                      )
                    Plaintiffs,       )
                                      )
        -against-                     )
                                      )        **07 Civ. 3014 (RPP)**
THE CITY OF WHITE PLAINS, et al.,     )
                                      )
                    Defendants.       )
-------------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**FOR ATTORNEYS' FEES AND COSTS**

MICHAEL L. SPIEGEL, ESQ.
SCOTT A. KORENBAUM, ESQ.
111 Broadway, Suite 1305
New York, NY 10006
*Attorneys for Plaintiffs*

March 14, 2011

## TABLE OF CONTENTS

INTRODUCTION AND PROCEDURAL HISTORY..................................................................1

THE COURSE OF THE LITIGATION..............................................................................2

ARGUMENT...................................................................................................4

      PLAINTIFFS SHOULD RECOVER THEIR FULL ATTORNEYS' FEES AND COSTS
      FOR THE WORK PERFORMED ON THE LITIGATION AND THE INSTANT FEE
      APPLICATION...........................................................................................4

            A.      Plaintiffs Are Prevailing Parties Under Rule 68 Entitled to Costs, Including
                   Reasonable Attorneys' Fees....................................................................4

            B.      The "Lodestar" Method of Determining a Reasonable Fee.........................5

            C.      The Hourly Rates Requested Are Reasonable..........................................8

                  1. Mr. Spiegel's Hourly Rate..................................................................9

                  2. Mr. Korenbaum's Hourly Rate.........................................................14

                  3. Paralegal Hourly Rate......................................................................17

             D. The Time Expended By Plaintiffs' Counsel Was Reasonable.........................17

            E. Plaintiffs Are Entitled to Recover Reasonable Out-of-Pocket Expenses...........19

CONCLUSION.................................................................................................19

## TABLE OF AUTHORITIES

A.R. v. N.Y. City Dept. of Educ., 407 F.3d 65 (2d Cir. 2005)....................................................8-9

Arbor Hill v. County of Albany, 522 F.3d 182 (2d Cir. 2007)...........................................5, 8, 13

Baird v. Boies, Schiller, & Flexner LLP, 219 F. Supp. 2d 510 (S.D.N.Y. 2002).....................2, 4

Banco Centrale v. Paraguay Humanitarian Found., 2007 WL 747814 (S.D.N.Y. Mar. 12, 2007)...............................................................................................................................13

Blanchard v. Bergeron, 489 U.S. 87, 109 S. Ct. 939 (1989)...........................................................7

Blum v. Stenson, 465 U.S. 886, 104 S. Ct. 1541 (1984)....................................................7, 8, 17

Cameron v. City of New York, 598 F. 3d 50 (2d Cir. 2010)...........................................3, 10, 15

Davis v. City of New Rochelle, 156 F.R.D. 549 (S.D.N.Y. 1994)......................................18, 19

Espinal v. Ramco Gen'l Stores, 2007 WL 998542 (S.D.N.Y. Apr. 3, 2007)................................14

Foster v. Kings Park Central Sch. Dist., 174 F.R.D. 19 (E.D.N.Y. 1997)......................................8

Gagne v. Maher, 594 F.2d 336 (2d Cir. 1979)...............................................................................18

Harrell v. Van Der Plas (Harrell I), 2009 U.S. Dist. LEXIS 52572 (S.D.N.Y. June 19, 2009)..........5

Harrell v. Van Der Plas (Harrell II), 2009 U.S. Dist. LEXIS 104828 (S.D.N.Y. Nov. 9, 2009)..............................................................................................................................1,  4

Hensley v. Eckerhart, 461 U.S. 424 (1983).........................................................................6, 17

In re Agent Orange Products Liability Litigation, 818 F.2d 226 (2d Cir. 1987)..............................8

In re Merrill Lynch v. Research Securities Litigation, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)...............................................................................................................................13

Integrated Marketing v. JEC Nutrition, 2007 WL 840304 (S.D.N.Y. Mar. 19, 2007)...................13

Interfaith Community Org. v. Honeywell, 426 F.3d 694 (3d Cir. 2005)........................................13

Johnson v. Georgia Highway Express, 488 F. 2d 714 (5th Cir. 1974).......................................5, 6

ii

<u>Kitevski v. City of New York</u>, 2006 U.S. Dist. LEXIS 11017 (S.D.N.Y. Mar. 16, 2006)..............12

<u>Laffey v. Northwest Airlines</u>, 572 F. Supp. 354 (D.D.C. 1983), *aff'd*, 746 F.2d 4 (D.C. Cir. 1984)...........................................................................................................................13

<u>LeBlanc-Sternberg v. Fletcher</u>, 143 F.3d 748 (2d Cir. 1998)...............................2, 9, 19

<u>Luca v. County of Nassau</u>, 698 F. Supp. 2d 296 (E.D.N.Y. 2010).......................15, 16

<u>Luciano v. Osten Corp.</u>, 109 F.3d 111 (2d Cir. 1997)....................................................6

<u>Marek v. Chesny</u>, 473 U.S. 1 (1985)...............................................................1, 4, 5

<u>Martinez v. Port Auth.</u>, 2005 U.S. Dist. LEXIS 19141 (S.D.N.Y. Sept. 2, 2005), *aff'd*, 445 F.3d 158 (2d Cir. 2006)....................................................................................3, 12

<u>Missouri v. Jenkins</u>, 491 U.S. 274 (1989).....................................................................8

<u>Natural Resources Defense Council, Inc. v. Fox</u>, 129 F. Supp. 2d 666 (S.D.N.Y. 2001)..............19

<u>New York State Ass'n for Retarded Children v. Carey</u>, 711 F.2d 1136 (2d Cir. 1983)..........17, 18

<u>Pennsylvania v. Delaware Valley Citizens' Council</u>, 478 U.S. 546 (1986)....................................7

<u>Perdue v. Kenny A.</u>, __U.S.__, 130 S. Ct. 1662 (2010).........................................5, 6, 7, 8, 17

<u>Reed v. A.W. Lawrence & Co.</u>, 95 F.3d 1170 (2d Cir. 1996).......................................................18

<u>Reiter v. MTA N.Y. City Transit Auth.</u>, 457 F. 3d 224 (2d Cir. 2006)..........................................9

<u>Riverside v. Rivera</u>, 477 U.S. 561 (1986).....................................................................................8

<u>Rodriguez v. Pressler & Pressler, LLP</u>, 2009 U.S. Dist. LEXIS 20655 (E.D.N.Y. Mar. 16, 2009)...........................................................................................................................17

<u>Rozell v. Ross-Holst</u>, 576 F. Supp. 2d 527 (S.D.N.Y. 2008)................................................14, 17

<u>Sas v. Trintex</u>, 709 F. Supp. 455 (S.D.N.Y. 1989)........................................................................5

<u>Shepherd v. Law Offices of Cohen & Slamowitz</u>, 2010 U.S. District LEXIS 125224 (S.D.N.Y. Nov. 29, 2010)...........................................................................................................6

<u>Simmons v. New York City Trans. Auth.</u>, 575 F.3d 170 (2d Cir. 2009)....................................16

iii

Tolbert v. Queens College, 242 F.3d 58 (2d Cir. 2001)..............................................15

Trichilo v. Secretary of Health & Human Servs., 823 F.2d 702 (2d Cir. 1987), *reaff'd and extended*, 832 F.2d 743 (2d Cir. 1987)....................................................................19

Trustees of the N.Y. Oil Heating Ins. Fund v. Anchor Tank Lines, 2011 U.S. Dist. LEXIS 22041 (S.D.N.Y. March 4, 2011)..............................................................................5

U.S. Football League v. National Football League, 887 F.2d 408 (2d Cir. 1989)..........................19

Vilkhu v. City of New York, 2009 U.S. Dist. LEXIS 73696 (E.D.N.Y. June 26, 2009).................................................................................................14, 16-17

Wise v. Kelly, 620 F. Supp. 2d 435 (S.D.N.Y. 2008)..............................................17

Zellner v. Summerlin, 494 F.3d 344 (2d Cir. 2007)..........................................15, 16

## INTRODUCTION AND PROCEDURAL HISTORY

Deja Barbour, Shinnel Gonzalez, and Rakayyah Massey contacted Michael L. Spiegel, Esq., after their criminal trial terminated in their favor in 2006.  Their arrests had arisen out of an incident in April 2004, when the three women had been out for the evening after work, and had ended up at an all-night diner in White Plains.  When plaintiffs left the diner with their food, they encountered the defendant police officers, who were in the process of questioning, and then arresting, two male friends of theirs.  When the three women protested the rough treatment being administered to the young men, and reacted in horror at what they were observing, they were placed under arrest by the defendants.  Their criminal cases proceeded for two years through a jury trial.  Declaration of Michael L. Spiegel in Support of Motion for Attorneys' Fees and Costs, March 14, 2011, (hereinafter "Spiegel Decl.") at ¶¶19-20.

Plaintiffs commenced this action by filing a Complaint on April 16, 2007.  After nearly four full years of litigation, and complete preparation for trial, on March 3, 2011, each plaintiff accepted Rule 68 Offers of Judgment.  On March 8, 2011, Judgment Pursuant to Rule 68 was entered in favor of each plaintiff "for the sum of Ten Thousand Dollars ($10,000.00), with the costs accrued, including reasonable attorneys' fees, in an amount to be determined by the Court."  Spiegel Decl. ¶19, and Exhibit A thereto.

Judgment having been entered in plaintiffs' favor pursuant to Rule 68, they are prevailing parties in this Section 1983 suit, and are entitled to attorneys' fees and costs of the litigation under Section 1988 and Rule 54(d) of the Federal Rules of Civil Procedure.  Marek v. Chesny, 473 U.S. 1, 5-9 (1985); Harrell v. Van Der Plas ("Harrell II"), 08 Civ. 8252, 2009 U.S. Dist. LEXIS 104828 at *2 n.2 (S.D.N.Y. Nov. 9, 2009) (Lynch, Cir. J., sitting by designation);

<u>Baird v. Boies, Schiller & Flexner LLP</u>, 219 F. Supp. 2d 510, 518 (S.D.N.Y. 2002) (Chin, J.) (same).

At no point in this litigation, prior to the eve-of-trial Rule 68 Offers, did defendants ever make an offer to settle this case. Plaintiffs, on the other hand, fully engaged in efforts to settle, including providing defendants' counsel with a reasonable demand when requested to do so. Despite plaintiffs' efforts, defendants declared, in April 2010, that defendants would not settle the case, and that it would proceed to trial. Therefore, defendants are fully responsible for the number of hours accrued by plaintiffs' counsel in prosecuting this case through full trial preparation. Spiegel Decl. ¶¶25-26.

## THE COURSE OF THE LITIGATION

Mr. Spiegel's pre-filing preparation of the case involved meetings with each of the three plaintiffs, consultation with their criminal defense attorneys, and obtaining and reviewing the documents generated by their prosecution and defense. He obtained, read, and created a digest of the criminal trial transcript, and prepared the Complaint in this action. He prepared discovery requests and responded to defendants' initial and supplemental discovery demands. Spiegel Decl. ¶21.

There were a total of nine depositions conducted in this case. Mr. Spiegel prepared each of the three plaintiffs for their depositions, and defended the depositions. He also prepared for and took the depositions of the six individual defendant police officers. Spiegel Decl. ¶22.

Mr. Spiegel prepared for and attended a pre-trial conference with the Honorable Stephen C. Robinson, and then four pre-trial conferences with the Honorable Kenneth M. Karas. He also attended the final pre-trial conference with this Court in January 2011, including oral argument

-2-

on pre-trial motions and rulings by the Court.  Spiegel Decl. ¶23.

As mentioned above, Mr. Spiegel also participated in an initial settlement conference in March 2010 with Magistrate Judge Paul E. Davison.  Subsequent to the conference, defendants' counsel informed Mr. Spiegel that the City of White Plains would not settle the case, and that it would proceed to trial.  Shortly thereafter, Mr. Spiegel requested that Scott A. Korenbaum, Esq., join him as co-counsel in the case to prepare for trial.  Spiegel Decl. ¶¶24-25; Declaration of Scott A. Korenbaum in Support of Plaintiffs' Motion for Attorneys' Fees and Other Discretionary Costs Pursuant to 42 U.S.C. § 1988 and F.R.Civ.P. 54(d) ("Korenbaum Dec.") at ¶4.  Mr. Korenbaum is an experienced civil rights litigator whom Mr. Spiegel has called upon before to assist him in the past (see e.g., Cameron v. City of New York, 598 F. 3d 50 (2d Cir. 2010); Martinez v. Port Auth. of NY & NJ, 445 F.3d 158 (2d Cir. 2006)).  Spiegel Decl. ¶24; Korenbaum Dec. at ¶22-23.

At the time of the Rule 68 Offers, in early March 2011, the case had been fully prepared for a jury trial.  Indeed, it had been prepared for trial twice – a trial date of January 24, 2011, was postponed at the last minute at defendants' request.  Spiegel Decl. ¶19.  This included preparation, submission, and filing of a Joint Pre-trial Order; the submission of pre-trial motions in limine and resolution of those motions by the Court; the submission of proposed voir dire and jury instructions; and all of the other necessary preparations for a jury trial, including preparation of an Opening and direct and cross examinations of the parties.  Spiegel Decl. ¶26; Korenbaum Dec. ¶¶25-26 and Exhibit C.

Plaintiffs seek attorneys' fees for all work performed through the date of the Rule 68 Offers, and for preparation of the instant fee application.  Mr. Spiegel and Mr. Korenbaum have

submitted contemporaneous, detailed time records specifying the work performed on this case. Spiegel Decl. Exhibit B; Korenbaum Dec. Exhibit C.  If appropriate, plaintiffs will supplement this application at the time of filing of any Reply brief on this motion, and thereafter as necessary.  Spiegel Decl. ¶27 n.2; Korenbaum Dec. ¶32.  Plaintiffs also seek costs and expenses for paralegal time expended on the litigation, and for out-of-pocket expenditures. Spiegel Decl. ¶37-38, Exhibits C and I.

## ARGUMENT

### PLAINTIFFS SHOULD RECOVER THEIR FULL ATTORNEYS' FEES AND COSTS FOR THE WORK PERFORMED ON THE LITIGATION AND THE INSTANT FEE APPLICATION

**A.**   **Plaintiffs Are Prevailing Parties Under Rule 68 Entitled to Costs, Including Reasonable Attorneys' Fees**

42 U.S.C. § 1988 provides, in relevant part, that in any § 1983 action, a court may award  "a reasonable attorney's fee as part of the costs."  On March 8, 2011, Judgments Pursuant to Rule 68 were entered in plaintiffs' favor.  Plaintiffs are therefore prevailing parties in this Section 1983 suit, and are entitled to costs of the litigation, including attorneys' fees, under Section 1988 and Rule 54(d) of the Federal Rules of Civil Procedure.  Marek, 473 U.S. at 5-9; Harrell II, 2009 U.S. Dist. LEXIS 104828 at *2  n.2 (Lynch, Cir. J., sitting by designation); Baird, 219 F. Supp. 2d at 518 (Chin, J.) (same).

Defendants' Rule 68 Offers proposed that plaintiffs take judgment "in the total sum of Ten Thousand Dollars and 00/100 ($10,000.00)."  Spiegel Decl., Exhibit A.  The Rule 68 Offers made no reference to costs.  "[I]f the [Rule 68] offer does not state that costs are included and an amount for costs is not specified, the court will be obliged by the terms of the

Rule to include in its judgment an additional amount which in its discretion it determines to be sufficient to cover the costs." Marek, 473 U.S. at 6. *See* Harell v. Van Der Plas ("Harrell I"), 08 Civ. 8252, 2009 U.S. Dist. LEXIS 52572 at *5-8 (S.D.N.Y. June 19, 2009) (collecting cases from other circuits at n.1); Sas v. Trintex, 709 F. Supp. 455, 457-58 (S.D.N.Y. 1989). "Since Congress expressly included attorney's fees as 'costs' available to a plaintiff in a § 1983 suit, such fees are subject to the cost-shifting provision of Rule 68." Marek, 473 U.S. at 9.

## B.    The "Lodestar" Method of Determining a Reasonable Fee

As the Supreme Court has recently remarked, Section 1988 "does not explain what Congress meant by a 'reasonable' fee, and therefore the task of identifying an appropriate methodology for determining a 'reasonable' fee was left for the courts." Perdue v. Kenny A., _ U.S. _, 130 S. Ct. 1662, 1669 (2010). In Perdue, the Court tackled that task anew, contrasting the various methodologies used by the lower courts, and settling upon the "lodestar" approach for determining the reasonable fee, in contrast to the so-called "Johnson approach" (which relied upon a list of twelve factors set out in Johnson v. Georgia Highway Express, 488 F.2d 714, 717-19 (5th Cir. 1974)). The problem with the Johnson approach, said the Supreme Court, was that it set "attorneys' fees by reference to a series of sometimes subjective factors [that] placed unlimited discretion in trial judges and produced disparate results." Perdue, 130 S. Ct. at 1672 (citation omitted).[1]

---

[1] Plaintiffs submit that insofar as Arbor Hill Concerned Citizens Neighborhood Ass'n. v. County of Albany, 522 F.3d 182 (2d Cir. 2007), a pre-Perdue decision, discusses how to determine a reasonable hourly rate, it is at odds with the holding and reasoning of Perdue. Arbor Hill abandoned the lodestar and emphasized the Johnson factors – an approach explicitly rejected by the Supreme Court. Perdue, 130 S. Ct. at 1672. *See* Trustees of the N.Y. Oil Heating Ins. Fund v. Anchor Tank Lines, 09 Civ. 9997, 2011 U.S. Dist. LEXIS 22041 at *10-13, n.7 (S.D.N.Y.

The Supreme Court pointed out that the "lodestar approach . . . achieved dominance in the federal courts after our decision in Hensley [v. Eckerhardt, 461 U.S. 424 (1983)]. Since that time, the lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence." Perdue, 130 S. Ct. at 1672 (citations and quotations omitted). As the Court declared:

> Although the lodestar method is not perfect, it has several important virtues. First, in accordance with our understanding of the aim of fee-shifting statutes, the lodestar looks to "the prevailing market rates in the relevant community." Developed after the practice of hourly billing had become widespread, the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case. Second, the lodestar method is readily administrable; and unlike the Johnson approach, the lodestar calculation is "objective," and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results.

Id. (citations omitted, emphasis in original).

When the Court adopted the lodestar approach in Hensley, it stated: "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of the lawyer's services." Hensley, 461 U.S. at 433; Perdue, 130 S. Ct. at 1673 (one of the lodestar's "chief virtues" is that it provides "a calculation that is objective"). On the other hand, the district court is given discretion in granting a fee award and assessing a reasonable fee in light of the circumstances of the case. Hensley, 461 U.S. at 437; Luciano v. Osten Corp., 109 F.3d 111 (2d Cir. 1997).

---

March 4, 2011); Shepherd v. Law Offices of Cohen & Slamowitz, 08 Civ. 6199, 2010 U.S. Dist. LEXIS 125224 at *6-8 (S.D.N.Y. Nov. 29, 2010).

With respect to determining the reasonable hourly rate, "the lodestar looks to 'the prevailing market rates in the relevant community.'" Perdue, 130 S. Ct. at 1672 (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)). In Blum, Legal Aid Society attorneys had represented the prevailing civil rights plaintiffs, and the issue presented was how to set a reasonable hourly rate under § 1988. The Blum court started by examining § 1988's legislative history, noting that "Congress directed that attorney's fees be calculated according to standards currently in use under other fee-shifting statutes: 'It is intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases.'" Blum, 465 U.S. at 893 (quoting S. Rep. No. 94-1011, p. 6 (1976)). The Court continued,

> the critical inquiry in determining reasonableness is now generally recognized as the appropriate hourly rate. . . . To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to – for convenience – as the prevailing market rate.

Id. at 898.

Perdue describes a reasonable fee, set at the "prevailing market rate in the relevant community," as one "that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." Perdue, 130 S. Ct. at 1672 (citing Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546, 565 (1986)); Blanchard v. Bergeron, 489 U.S. 87, 94 (1989); LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 764 (2d Cir. 1998). Because civil rights litigation is risky, defendants often win at trial, and contingency fee

-7-

arrangements often mean that plaintiffs' attorneys absorb expenses from unsuccessful cases, a relatively few members of the bar are willing to regularly undertake litigation of constitutional torts. Spiegel Decl. ¶17. All of these factors mean that "induc[ing] a capable attorney to undertake the representation of a meritorious civil rights case," Perdue, 130 S. Ct. at 1672, requires that the courts grant full "lodestar" recoveries in successful cases, including reference to the "prevailing market rates in the relevant community . . . governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases.'" Blum, 465 U.S. at 893.

A "reasonable hourly rate" has also been described as "one that grants the successful civil rights plaintiff a fully compensatory fee, comparable to what is traditional with attorneys compensated by a fee-paying client." Foster v. Kings Park Central Sch. Dist., 174 F.R.D. 19, 26-27 (E.D.N.Y. 1997) (quoting Missouri v. Jenkins, 491 U.S. 274, 286 (1989)). As former Chief Justice Rehnquist recognized, the reasonableness of a fee should be determined "in light of both the traditional billing practices in the profession, and the fundamental principle that the award of a 'reasonable' attorney's fee under § 1988 means a fee that would have been deemed reasonable if billed to affluent plaintiffs by their own attorneys." Riverside v. Rivera, 477 U.S. 561, 591 (1986) (Rehnquist, Ch. J., dissenting).

The relevant community for a fee determination is the judicial district in which the trial court sits – here, the Southern District of New York. See, Arbor Hill, 522 F.3d 182 (2d Cir. 2007); In re Agent Orange Prods. Liability Litig., 818 F.2d 226, 232 (2d Cir. 1987).

**C.    The Hourly Rates Requested Are Reasonable**

When determining the prevailing market rate, "current rates, rather than historical rates,

-8-

should be applied in order to compensate for the delay in payment." A.R. v. N.Y. City Dep't

of Educ., 407 F.3d 65, 83 (2d Cir. 2005) (quoting LeBlanc-Sternberg, 143 F.3d at 764); Reiter

v. MTA N.Y. City Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006).  The delay in payment in

this case is significant, since the litigation has consumed almost four years.

      1.    Mr. Spiegel's Hourly Rate

      The current hourly rate for plaintiffs' counsel Michael L. Spiegel, Esq., is $625 per hour.

This is the rate he currently charges in retainer agreements.  Spiegel Decl. ¶30.  Mr. Spiegel has

an extensive background in litigating complex civil rights and constitutional law cases.  As his

declaration makes clear, he has been practicing over 25 years, and he has particular expertise in

false arrest and malicious prosecution cases, having lectured on that subject to distinguished

audiences.  He attended Harvard College and City University of New York, and received his

law degree from New York University School of Law.  He was a Root Tilden Scholar at NYU,

and clerked for the Honorable Whitman Knapp during law school.  Spiegel Decl. ¶¶3-4, 9-10.

      He was an associate attorney at the firm of Kostelanetz, Ritholz, Tigue, & Fink upon

graduation from law school in 1984, and then joined the Legal Aid Society Criminal Defense

Division in 1986.  In 1992, he took a year's leave of absence from the Legal Aid Society to

become the founding Director of a federally-funded HIV Legal Assistance Clinic at the non-

profit Legal Action Center in New York City.  Spiegel Decl. ¶4.

      In 1994, Mr. Spiegel moved to California and entered private practice.  He was

appointed pursuant to 21 U.S.C. § 848(q) to represent two death row clients in federal *habeas*

*corpus* proceedings in the Northern and Eastern Districts of California: Danielson v. Calderon in

1995, and Crittenden v. Ayers in 1996.  Petitioner Danielson took his own life on death row; the

Crittenden proceeding is now pending in the Eastern District of California, after remand in 2010 from the Ninth Circuit Court of Appeals.  In 1995, Mr. Spiegel returned to New York City and opened a solo practice focusing on police misconduct, first amendment, and death penalty constitutional litigation.  He was qualified to represent defendants facing the death penalty under the 1995 New York death penalty statute, and tried a capital case to a penalty phase verdict in 2003 (People v. Alvarez, Ind. No. 1352/00, Westchester County).  Spiegel Decl. ¶¶5-6.

Since 2000, the overwhelming majority of his cases have involved claims of false arrest, malicious prosecution and/or excessive force by police officers.  He has litigated approximately 150 civil rights cases in the Southern District of New York, and has settled police misconduct cases for amounts as high as $2,750,000.00.  Since 2005, he has been counsel to over 250 plaintiffs in the pending Consolidated RNC Litigation, 05 CV 8453, 05 CV 9484, 05 CV 9738, 05 CV 9483, 07 Civ. 7678 (RJS) (JCF), arising from mass arrests at the 2004 Republican National Convention.  Recently, in Cameron v. City of New York, 598 F.3d 50 (2d Cir. 2010), he successfully argued that it was error to admit certain categories of testimony from prosecutors in false arrest/malicious prosecution cases, which had been a recurring issue at the trials of such cases.[2]  As a result of Mr. Spiegel's experience and reputation, he is regularly consulted by practitioners in New York and other states for advice on how to handle police misconduct § 1983 cases.  Spiegel Decl. ¶¶7-8.

Mr. Spiegel has lectured at many Continuing Legal Education programs on Section 1983 law and litigation.  Most recently, on November 30, 2010, he delivered a presentation as part of

---

[2]  As in this case, Mr. Korenbaum was Mr. Spiegel's co-counsel in Cameron.  Spiegel Decl. ¶7, n.1; Korenbaum Dec. ¶23.

a Law Clerk Videoconference panel sponsored by the Federal Bar Council for the Second Circuit, "Issues in 42 U.S.C. § 1983 Litigation," attended by approximately 185 federal district and appellate court law clerks.  The topic of his presentation was "Section 1983 Claims for False Arrest, Malicious Prosecution & Fabrication of Evidence in the Second Circuit."  Spiegel Decl. ¶9.

In July 2010, Mr. Spiegel was a faculty member at the American Association for Justice (formerly the American Trial Lawyers Association) Annual Convention Education Program. The title of his presentation was "Section 1983 Claims for Malicious Prosecution and Fabrication of Evidence: The Fourth Amendment and/or the Due Process Clause?"  He has been a faculty member of the annual Intensive Trial Advocacy Program at Cardozo Law School since 1993, and has taught in the same program at the University of San Francisco School of Law. Spiegel Decl. ¶¶10-11.

Mr. Spiegel is a member of the Civil Rights Law Panel of the Legal Referral Service of the Association of the Bar of the City of New York and the New York County Lawyers' Association.  The Legal Referral Service qualifies attorneys at different levels of experience and competency, and he is fully qualified by the Referral Service to accept all civil rights cases. He served as a member of the Civil Rights Committee of the Association of the Bar of the City of New York from 2007 to 2010.  Spiegel Decl. ¶¶12-13.

Mr. Spiegel is a member of the New York and California state bars; he is also a member of the bar of the United States District Courts for the Southern and Eastern Districts of New York, and the Northern and Eastern Districts of California, the United States Courts of Appeals for the Second and Ninth Circuits, and the United States Supreme Court.  Spiegel Decl. ¶14.

The people Mr. Spiegel represents in civil rights cases can only afford to retain an attorney on a contingency basis, and all of his cases are handled that way.  He does not receive an initial retainer from any of his clients, nor do any of them make even a token contribution to litigation expenses.  He is compensated based upon a percentage of any judgment or settlement, or through § 1988 fee awards and settlements.  He bears all of the costs of litigation while the case is pending, and has always released his client from any obligation to pay for expenses which have been advanced, if there is no recovery.  For example, in 2009, he resolved a case after twelve years of litigation and two unsuccessful trials, absorbing $40,000 in expenses. Richards v. City of New York, 97 Civ. 7990 (BSJ).  Spiegel Decl. ¶¶15-16.

Civil rights cases are extremely risky and involve arcane issues of law.  The New York City Law Department has described civil rights law as "the Constitution of the United States and the vastly complex area of Federal law specific to 42 U.S.C. § 1983 . . . , a complex, ever-changing area of law." (New York City Law Department Annual Report 2006, at 25.)  It is well known that only a small segment of the bar is willing to take such cases as the bulk of a law practice.  Because the chances of losing police misconduct cases is high, Mr. Spiegel and other civil rights lawyers in New York depend on the availability of a full "lodestar" recovery if they do prevail.  Spiegel Decl. ¶¶17-18; Korenbaum Dec. ¶33.

Mr. Spiegel has previously been judicially awarded fees at the highest range for civil rights litigators.  For example, in March 2006 he was awarded fees at the rate of $425 per hour in Kitevski v. City of New York, 2006 U.S. Dist. LEXIS 11017, *17 (S.D.N.Y. Mar. 16, 2006). Before that, he was awarded attorneys' fees in Martinez v. Port Authority of NY & NJ, 2005 U.S. Dist. LEXIS 19141 (S.D.N.Y. Sept. 2, 2005), aff'd, 445 F.3d 158 (2d Cir. 2006), at the

-12-

rate of $400 per hour for work that concluded in November 2004.  Spiegel Decl. ¶31.

Mr. Spiegel also has special expertise which was brought to bear in these cases, because of his significant experience in false arrest and malicious prosecution cases.  To the extent that "a reasonable, paying client wish[ing] to spend the minimum necessary to litigate the case effectively," Arbor Hill, 522 F.3d at 190, would seek competent counsel in the market place, there would be especially good reasons for them to seek out Mr. Spiegel, given his experience and specialization in this type of case.

Exhibit G to the Spiegel Decl. is the December 6, 2010, National Law Journal's most recent annual survey of law firm hourly billing rates.[3]  The average partner rate among the New York firms that reported such rates is $624 per hour; the median partner rate among New York firms reporting that figure is $633 per hour.  Top partner rates among New York firms reported in the survey range between $995 and $730 per hour.[4]

Exhibit H to the Spiegel Decl. is the "Laffey Matrix" (www.laffeymatrix.com), which is an accepted tool for establishing hourly rates for attorneys in the Washington, D.C.-Baltimore area.  Laffey v. Northwest Airlines, 572 F. Supp. 354 (D.D.C. 1983), aff'd, 746 F.2d 4 (D.C. Cir. 1984); Interfaith Comm'ty Org. v. Honeywell, 426 F.3d 694, 708-709 (3d Cir. 2005).  By using this method of calculating attorneys' hourly rates, Mr. Spiegel would receive $709 per

---

[3]  The survey does not cover all law firms, and it is well known among attorneys at firms in New York that many of the firms with the highest rates do not respond to the survey.  Spiegel Decl. ¶34.

[4]  The survey is often used by federal courts to determine appropriate hourly rates.  See e.g., Integrated Marketing v. JEC Nutrition, 2007 WL 840304 at *2 (S.D.N.Y. Mar. 19, 2007); Banco Centrale v. Paraguay Humanitarian Found., 2007 WL 747814 at *2 (S.D.N.Y. Mar. 12, 2007); In re. Merrill Lynch v. Research Securities Litig., 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007).

hour.

Courts in this district have also awarded similar rates for civil rights counsel of the ability, expertise and experience of plaintiffs' counsel here. "A review of precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600 . . . with average awards increasing over time." Vilkhu v. The City of New York, 2009 U.S. Dist. LEXIS 73696 at *13 (E.D.N.Y. June 26, 2009) (Sifton, J.), *vacated on other grounds*, 372 Fed. Appx. 222, 2010 U.S. App. LEXIS 8191 (2d Cir. Apr. 21, 2010). Several years ago, in Rozell v. Ross-Holst, 05 Civ. 2936, 2008 U.S. Dist. LEXIS 41609 at *35 (S.D.N.Y. May 29, 2008), the court awarded fees at the rate of $600 per hour. In a 2007 case, Espinal v. Ramco Gen'l Stores, 2007 WL 998542 (S.D.N.Y. Apr. 3, 2007), the court awarded $550 per hour.

Exhibits D, E, and F to the Spiegel Decl. are the declarations of Alan H. Levine, Esq., Jonathan C. Moore, Esq., and Robert L. Herbst, Esq., all of whom are experienced civil rights litigators with comparable years of experience, ability and reputation to Mr. Spiegel, in which they attest that their own hourly rates match or exceed the hourly rate sought by Mr. Spiegel herein, and that $625 per hour "is well within the bounds of hourly rates charged by lawyers of Mr. Spiegel's experience and ability."

2.      Mr. Korenbaum's Hourly Rate

When defendants' counsel declared that there would be no settlement of this case, and cancelled the continuing settlement conference with Magistrate Judge Davison, Mr. Spiegel asked Scott A. Korenbaum, Esq., to assist him on the case. In light of defendants' declared intention to litigate the case through trial, there was good reason to ask a second attorney to

-14-

work on the case, especially given the number of witnesses which were expected to testify at

trial (a minimum of nine – the three plaintiffs and at least six defendants).  Furthermore,

defendants' counsel advised plaintiffs' counsel and the Court at the final pre-trial conference

that he intended to call several other witnesses at trial, in addition to the parties.  Spiegel Decl.

¶¶24, 26.

Mr. Korenbaum's requested hourly rate of $450 is the rate that he charges in his civil

rights retainer agreements in the event he is to be compensated on a *quantum meruit* basis (*e.g.*,

if he were to be discharged by a client who was ultimately successful in the litigation).

Korenbaum Dec. at ¶15.  Mr. Korenbaum has practiced law for 22 years, twenty of which he

has specialized in the area of civil rights litigation in general, and police misconduct litigation in

particular.  Korenbaum Dec. at ¶¶5-9.  He is recognized by his colleagues as one of the most

able appellate and trial counsel in matters relating to civil rights litigation.  Korenbaum Dec. at

Exhibit A, ¶4.  Notable civil rights practitioners, including Frederick K. Brewington, Esq.,

routinely retain his services to handle their appellate work.  Korenbaum Dec. at ¶¶10-13.  In

fact, Mr. Korenbaum is responsible for two of the most-oft cited cases of the past decade,

Tolbert v. Queens College, 242 F.3d 58 (2d Cir. 2001), and Zellner v. Summerlin, 494 F.3d 344

(2d Cir. 2007).  Korenbaum Dec. at ¶¶9, 11, Exhibit A, ¶5.  Most recently, Mr. Korenbaum and

Mr. Spiegel were responsible for this decade's most important decision in the area of police

misconduct litigation, Cameron v. City of New York, 598 F.3d 50 (2d Cir. 2010).  Korenbaum

Dec. at ¶23; Exhibit A, ¶6.

Mr. Korenbaum's talents were most recently recognized by the Honorable Frederick

Block in Luca v. County of Nassau, 698 F. Supp. 2d 296, 304-05 (E.D.N.Y. 2010).  Referring

to Mr. Korenbaum's success in <u>Zellner v. Summerlin</u>, 494 F.3d 344 (2d Cir. 2007), and on

appeal in <u>Luca v. County of Nassau</u>, Docket No. 08-3384, 2009 U.S. App. LEXIS 18631 (2d

Cir. Aug. 19, 2009), Judge Block wrote the following:

> In *Zellner*, after the district court vacated a jury verdict in favor of
> the plaintiff, Korenbaum prevailed upon the Second Circuit to
> reverse the district court and reinstate the jury's verdict. . . . The
> scope of this victory attests to Korenbaum's appellate skills and
> supports the proposition that a reasonable paying client would seek
> him out and pay him a substantial fee to defend a favorable verdict
> on appeal.
>
> In this case, Korenbaum achieved a total victory over his adversary
> on all the substantive issues raised by the County's appeal. The only
> issue resolved in the County's favor--the fee remand--derived from
> the intervening opinion in *Simmons*. The issuance of a Summary
> Order by the appellate court succinctly disposing of all the County's
> substantive claims is testament to Korenbaum's appellate skills.
>
> The Court therefore finds that a reasonable, paying client would be
> willing to pay Korenbaum's requested rate of $ 350 per hour for his
> appellate services. *Once again, Korenbaum functioned as a partner,*
> *not a senior associate; the hourly rate of $ 350 is solidly within the*
> *current range of rates for partners in the Eastern District.*

<u>Luca</u>, 698 F. Supp. 2d at 304-05 (emphasis added).  Korenbaum Dec. at ¶19.[5]

Almost three and a half years ago, in <u>Reddy v. The Salvation Army</u>, 06 CV 5176 (SAS)

(AJP), Magistrate Judge Andrew Peck approved of an hourly rate of $400 for Mr. Korenbaum

in connection with a sanctions motion.  Korenbaum Dec. at ¶15 and Exhibit B.  Additionally,

Mr. Korenbaum's requested hourly rate of $450 is in line with a partner in a small law firm with

---

[5]  In <u>Luca</u>, even though his customary rate at the time plaintiff submitted her supplemental fee
application was $400/hr., Mr. Korenbaum only requested $350/hr. because <u>Luca</u> was an Eastern
District case, thereby requiring the application of Eastern District rates even though his office was
in the Southern District.  Korenbaum Dec. at ¶18.  *See,* <u>Simmons v. New York City Trans. Auth.</u>,
575 F.3d 170 (2d Cir. 2009); <u>Luca</u>, 698 F. Supp. 2d at 300, 303-04.

twenty-two years experience. Korenbaum Dec. at Exhibit A, ¶¶7, 11. *See* Vilkhu v. City of New York, 2009 U.S. Dist. LEXIS 73696 (E.D.N.Y. Jun. 26, 2009), *aff'd in part, vacated and remanded in part,* 372 Fed. Appx. 222, 2010 U.S. App. LEXIS 8191 (2d Cir. Apr. 21, 2010); Rodriguez v. Pressler & Pressler, L.L.P., 2009 U.S. Dist. LEXIS 20655 (E.D.N.Y. Mar. 16, 2009); Wise v. Kelly, 620 F. Supp. 2d 435, 445 (S.D.N.Y. 2008). The National Law Journal survey demonstrates that $450 per hour is well within the range of "prevailing market rates in the relevant community." Perdue, 130 S. Ct. at 1672 (2010) (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)). Spiegel Decl., Exhibit G. The Laffey Matrix, would award him $709 per hour. Spiegel Decl., Exhibit H.

### 3. Paralegal Hourly Rate

Plaintiffs seek compensation for paralegal time at the rate of $125 per hour, which is a recognized rate in this district. Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008). Mr. Spiegel hires paralegals through the Harvard Center for Public Interest Careers; they are *summa cum laude* or *magna cum laude* graduates of Harvard College who work for Mr. Spiegel before applying to law school. Spiegel Decl. ¶37.

### D. **The Time Expended By Plaintiffs' Counsel Was Reasonable**

The Supreme Court has noted that a reasonable hourly fee will normally encompass all hours reasonably expended on the litigation. Hensley, 461 U.S. at 435. A party seeking fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records. *See* New York State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983). Exhibits B and C to the Spiegel Decl., and Exhibit C to the Korenbaum Dec., are accurate, detailed and contemporaneous time records maintained by

plaintiffs' counsel and paralegals.  The records are sufficiently specific and detailed so that the Court can determine the nature of the work performed in the successful prosecution of this case. Mr. Spiegel spent a total of 328.6 hours on this litigation.  At his hourly rate of $625 per hour, plaintiffs are requesting compensation of $205,375.00 for his work.  Mr. Korenbaum spent 137.6 hours on the case; at his hourly rate of $450 per hour, plaintiffs request compensation of $61,920.00.

As set forth in the Spiegel Decl., defendants withdrew from settlement discussions in April 2010.  Obviously, had defendants proceeded with settlement negotiations, or made an earlier Rule 68 Offer, many of the hours which were expended on this litigation might have been unnecessary.  Instead, the case was fully prepared for trial, twice, at the time defendants made their Rule 68 Offers.  Spiegel Decl. ¶19, 25.  Therefore, defendants are entirely responsible for the number of hours expended on this case.

The attorneys' fees sought herein include compensation for the time spent preparing the instant fee application.  It is well-settled that attorneys should be compensated for "'time reasonably spent by plaintiff's attorneys in establishing their fee' pursuant to fee-shifting statutes, such as § 1988."  Davis v. City of New Rochelle, 156 F.R.D. 549, 560 (S.D.N.Y. 1994) (quoting Gagne v. Maher, 594 F.2d 336, 344 (2d Cir. 1979), aff'd, 448 U.S. 122 (1980)); Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1183-84 (2d Cir. 1996); New York State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).  The time submitted for preparing this fee application is 20.4 hours by Mr. Spiegel, and 7.9 hours by Mr. Korenbaum, which is 6% of the total attorney time claimed for work on this case.  "The Second Circuit has upheld fee awards where the time spent on the fee application was up to 24% of the total time

-18-

claimed ... [and] other courts within this Circuit have awarded fee application awards in the range of 8 to 24 percent of the total time claimed." Natural Resources Defense Council, Inc. v. Fox, 129 F. Supp. 2d 666, 675 (S.D.N.Y. 2001) (quoting Davis v. City of New Rochelle, 156 F.R.D. 549, 561 (S.D.N.Y. 1994)); see, Trichilo v. Secretary of Health & Human Servs., 823 F.2d 702 (2d Cir. 1987), reaff'd and extended, 832 F.2d 743 (2d Cir. 1987) (approved fee application constituted 24% of total time claimed).[6]

**E.      Plaintiffs Are Entitled to Recover Reasonable Out-of-pocket Expenses**

Pursuant to 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 54(d), plaintiffs seek an award of reasonable out-of-pocket expenses in this case.  As prevailing parties, plaintiffs are entitled to recover such expenses incurred during the litigation that would normally be charged to a fee-paying client.  Attached as Exhibit I to the Spiegel Decl. in an invoice for the expenses of the litigation, and documentation supporting the major underlying expenses.  These expenses are of the type routinely billed by attorneys to fee-paying clients and were actual and necessary costs incurred to prosecute this case. See, e.g., LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998); U.S. Football League v. National Football League, 887 F.2d 408, 416 (2d Cir. 1989).  The total of out-of-pocket expenses incurred by plaintiffs is $4,932.94.

**CONCLUSION**

**WHEREFORE**, plaintiffs respectfully request that this Honorable Court award a total of $280,940.44 as attorneys' fees and costs to the plaintiffs as prevailing parties in this

---

[6] If necessary, plaintiffs will supplement their request for fees and costs to reflect all work done on this matter from this point forward – such as a Reply to the defendants' Opposition or work to be performed in response to the Court's actions with respect to this fee application, including any appeal the parties may take.  Spiegel Decl. ¶27, n.2; Korenbaum Dec. ¶32.

litigation, in the following amounts:

a.    Attorney's fees to Michael L. Spiegel at the rate of $625 per hour for 328.6

hours spent on this litigation through the date of this application, for a total of

$205,375.00; and

b.    Attorney's fees to Scott A. Korenbaum at the rate of $450 per hour for 137.6

hours spent on this litigation, for a total of $61,920.00; and

c,    Paralegal fees at the rate of $125 per hour for 69.7 hours spent on the litigation,

for a total of $8,712.50; and

d.    Reasonable costs and expenses in the amount of $4,932.94; and

e.    Such other costs and expenses as may be incurred hereafter.

Dated: New York, New York
       March 14, 2011

Respectfully submitted,

_____s/_____
Michael L. Spiegel, Esq.
Scott A. Korenbaum, Esq.
111 Broadway, Suite 1305
New York, NY  10006
(212)587-8558
*Attorneys for Plaintiffs*