UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
DEJA BARBOUR, SHINNEL GONZALEZ,
and RAKAYYAH MASSEY,

                         Plaintiffs,                                    07 Civ. 3014 (RPP)

          - against -                                         **OPINION AND ORDER**

THE CITY OF WHITE PLAINS, et al.,

                         Defendants.
--------------------------------------------------------------X
**ROBERT P. PATTERSON, JR., U.S.D.J.**

  On December 6, 2012, Plaintiffs Deja Barbour, Shinnel Gonzalez, and Rakayyah Massey

(collectively, the "Plaintiffs") moved for post-judgment costs and attorney's fees, requesting an

award of $88,830.68.  (See Mem. of Law in Supp. of Pls.'s Mot. for Post- J. Interest, Costs, &

Att'y's Fees ("Pls.'s Mot.") 10, ECF No. 72.)  The request covered services performed primarily

by solo practitioner Michael L. Spiegel, Esq., and assisting attorney Scott A. Korenbaum, Esq.,

on behalf of Plaintiffs.  Plaintiffs' counsel performed the work described on the instant

application after entry of a judgment in Plaintiffs' favor by this Court. Barbour v. City of White

Plains, 788 F.Supp.2d 216 (S.D.N.Y. 2011) ("Barbour I") (approving attorney's fees and costs

under 42 U.S.C. § 1988).  The work performed includes preparation for an appeal of that

judgment taken by John Heffner, Lavalle Larrier, Gilbert Lopez, Antonio Nolletti, John and Jane

Does, The City of White Plains, Mark Burnett, Anthony Carra, Kevin Christopher, and Anthony

Farrelly (collectively, the "Defendants").  The Plaintiffs prevailed on appeal. See Barbour v. City

of White Plains, 700 F.3d 631 (2d Cir. 2012) ("Barbour II").

On February 4, 2013, the Defendants, represented in the instant motion by new counsel,[1] filed a memorandum in opposition to Plaintiffs' request, arguing that Plaintiffs' attorneys spent an unreasonable amount of time defending the appeal and that the hourly rate sought by Mr. Spiegel is excessive. (See Mem. of Law in Opp. to Pls.'s Mot. ("Defs.'s Opp.") 1, ECF No. 84.) In a reply filed on March 4, 2013, Plaintiffs adjusted their requested award to include the work done on the reply, bringing their total request for post-judgment attorney's fees and costs, including post-judgment interest, to $105,898.10. (See Reply Mem. of Law in Supp. of Mot. for Post-J. Att'y's Fees & Costs ("Pls.'s Reply") 15, ECF No. 86.)

After considering the parties' arguments and for the reasons that follow, Plaintiffs' motion for attorneys' fees and costs is GRANTED.

## I.    BACKGROUND

On April 16, 2007, the Plaintiffs filed an action under 42 U.S.C. § 1983 against the Defendants, asserting claims for false arrest, excessive force, malicious prosecution and failure to intervene, and for malicious prosecution under New York state law.  (See Compl., ECF No. 1.)  On March 1, 2011, two weeks before the trial date, Defendants, through then-counsel Joseph A. Maria, Esq., made three offers of judgment pursuant to pursuant to Rule 68 of the Federal Rules of Civil Procedure, which were accepted by each Plaintiff. (See Notice of Acceptance with Offer of J. to Deja Barbour, ECF No. 47; Notice of Acceptance with Offer of J. to Shinnel Gonzalez, ECF No. 48; Notice of Acceptance with Offer of J. to Rakayyah Massey, ECF No. 49.) On March 8, 2011, judgment pursuant to Rule 68 was entered in favor of each Plaintiff for

---

[1] Defendants have changed counsel throughout the course of this litigation. Joseph A. Maria, Esq., represented the City of White Plains Defendants throughout the trial level litigation before this Court and in the course of the appeal before the Second Circuit. The Defendants hired substitute counsel, Peter A. Meisels, Esq., of Wilson, Elser, Moskowitz Edelman and Dicker LLP to prepare the instant motion.

the sum of $10,000 per plaintiff to Deja Barbour, Shinnel Gonzalez, and Rakayyah Massey. (See Rule 68 J., Mar. 8, 2011, ECF No. 57.)

On March 14, 2011, Plaintiffs moved pursuant to 42 U.S.C. § 1988 for a total $290,997.94 in attorney's fees and costs incurred during the four years this suit was pending and preparations for trial as well as for work performed in preparing the motion for attorney's fees itself and subsequent reply papers. (See Mot. for Att'y's Fees & Costs, ECF No. 58; Reply Memo. in Supp. of Mot. for Att'y's Fees & Costs, ECF No. 66.) This Court granted that motion. See Barbour I, 788 F.Supp.2d at 220. Defendants appealed, arguing that this Court had abused its discretion in awarding attorney's fees. (See Br. for Defs.-Appellants ("Defs. Appeal Br.") 9, No. 11-2229, Barbour v. City of White Plains, 700 F.3d 631 (2d Cir. 2012).) The Second Circuit, in a per curiam opinion, affirmed this Court's approval of an award of $290,997.94 for costs, including interest and attorney's fees. See Barbour II, 700 F.3d at 631.

In the instant motion, Plaintiffs ask the Court to apply the same hourly rates it applied in Barbour I for litigation prior to judgment. (See Pls.'s Mot. at 10.) In Barbour I, this Court reviewed Mr. Spiegel's requested hourly rate of $625 and Mr. Korenbaum's requested hourly rate of $450 and held that "after review of Mr. Spiegel's and Mr. Korenbaum's declarations and their appended exhibits, the requested rates are found to be reasonable and within the range of fees paid to civil rights attorneys of similar skill and experience in the Southern District of New York." Barbour I, 788 F.Supp.2d at 226. The Second Circuit upheld this finding. See Barbour II, 700 F.3d at 635 ("Defendants neither object to those rates nor demonstrate any abuse of discretion relating to the calculation of the fee award.").

3

## II.   LEGAL STANDARD

Title 42 U.S.C. § 1988 provides that in federal civil rights actions "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." To determine whether an attorney's fee is reasonable, a court must "calculate the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). This approach, termed the lodestar approach, was established as the prevailing method for determining attorney's fees in Perdue v. Kenny A., 559 U.S. 541 (2010), where the Supreme Court affirmed the utility of this method to evaluate the reasonableness of fee applications in the § 1988 context. In doing so, it rejected the Fifth Circuit's method, articulated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), which cited twelve equitable factors for a judge to consider in the light of his or her experience and judgment. Departing from methodology that gave trial judges greater discretion, the Perdue Court noted that the lodestar approach is easily administrated and the calculation is objective, thus permitting meaningful judicial review and producing reasonably predictable results. See Perdue, 559 U.S. at 551-52 (citing Hensley, 461 U.S. at 433) (other citations omitted). Further, by looking to the prevailing market rate in the relevant community,[2] see, e.g., Blum v. Stenson, 463 U.S. 886, 895 (1984), the Supreme Court held that the lodestar method produces an award that roughly approximates what a prevailing attorney would have received if he or she had represented a paying client who was billed by the hour in a comparable case. See Perdue, 559 U.S. at 551. Thus, the lodestar method yields a fee that is presumably sufficient to induce a competent attorney to undertake the representation of a meritorious civil

---

[2] The Second Circuit has held that the relevant community is generally determined by the district in which the court sits, the so-called "forum rule." See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 484 F.3d 162, 183 (2d Cir. 2007) (holding that the district court should generally use the prevailing hourly rate in the district where it sits to calculate what has been called the "lodestar," but may in some cases adjust the rate to account for a plaintiff's decision to seek out-of-district counsel).

rights case. See id. at 552 (citing Blum, 463 U.S. at 897 ("[A] reasonable attorney's fee is one

that is adequate to attract competent counsel, but that does not produce windfalls to attorneys.")).

Enhancements of attorney's fees beyond the lodestar calculation are reserved for "rare" and

"exceptional" circumstances. See id.

Accordingly, this Court will follow the lodestar method, "determining the amount of a

reasonable fee [by calculating] the number of hours reasonably expended on the litigation

multiplied by a reasonable hourly rate." Hensley, 461 U.S. at 433. It will then consider

reductions from that calculation requested by the Defendants.  The Court is mindful that "the fee

applicant bears the burden of establishing entitlement to an award and documenting the

appropriate hours expended and hourly rates." Id. at 436.

## III.   DISCUSSION

### A.  Whether the Plaintiffs' Attorneys' Time Was Reasonably Expended

Defendants first argue that Plaintiffs' attorneys, Mr. Spiegel and Mr. Korenbaum, have

submitted time records that include "excessive, redundant, or otherwise unnecessary hours," id.

at 434, that were not reasonably expended on litigation and should therefore be excluded. In their

challenge of the hours billed, the Defendants make three separate arguments: (1) that the hours

expended by Plaintiffs' counsel in working on a straightforward appeal of issues already raised

in the trial court were excessive; (2) that Mr. Spiegel and Mr. Korenbaum are seeking

reimbursement for duplicative work; and (3) that several of the time entries submitted by

Mr. Spiegel constitute block billing and thus are so vague and non-descriptive as to preclude

meaningful review and should be excluded. (See Defs.'s Opp. at 1.) Having reviewed the

contemporaneous time sheets submitted by Plaintiffs' attorneys and having considered

Defendants' arguments, this Court finds Defendants' contentions to be without merit.

1.  *Whether the Hours Expended by Plaintiffs' Attorneys on Appeal Were Excessive*

Defendants first assert that Plaintiffs' attorneys spent an unreasonable amount of time preparing for what was "not a complicated appeal." (Defs.'s Opp. at 4.)  They argue that these "excessive, redundant or otherwise unnecessary hours" should be excluded.  Hensley, 461 U.S. at 434; see also Raniola v. Bratton, 96 Civ. 4482 (MHD), 2003 WL 1907865, at *3 (S.D.N.Y. Apr. 21, 2003) (if an attorney spends excessive time on a task, "the court should reduce the claimed hours for compensation purposes"). In particular, the Defendants point to the seventy hours of time Mr. Spiegel and Mr. Korenbaum spent on legal research.[3] The collective time billed, the Defendants argue, far outstrips the complexity of the issues raised on appeal.

The appeal was taken by the Defendants on the subject of whether or not Plaintiffs' attorneys were entitled to fees and costs for the work they did in trial-level litigation before this Court leading up to the Rule 68 accepted offer of settlement.  In arguing that the appeal was uncomplicated, Defendants characterize the issues presented to the Second Circuit as "the very same issues raised, briefed, and decided in Plaintiffs' original fee application to this Court." (Defs.'s Opp. at 5.)  They name two issues: "(1) whether Plaintiffs were entitled to fees as a prevailing party; and (2) whether the attorneys' rates and hours expended in the instant case were reasonable." (Id.)

However, this broad brush argument obscures both the complexity and the novelty of the issues with which Plaintiffs' attorneys were presented on appeal. At the trial level before this Court, Plaintiffs' counsel had to address the Defendants' issue of whether Plaintiffs were

---

[3] Mr. Spiegel spent 40.2 hours on legal research in preparation for the appeal. (See Decl. of Michael L. Spiegel in Supp. of Mot. for Post-J. Att'y's Fees & Costs ("Spiegel Decl.") Ex. A, Dec. 6, 2012, ECF No. 73.) Mr. Korenbaum spent about thirty-one hours reading and analyzing case law. (See Decl. of Scott A. Korenbaum in Supp. of Mot. for Post-J. Att'y's Fees & Costs ("Korenbaum Decl.") Ex. 1, Dec. 6, 2012, ECF No. 74.)

prevailing parties and thus entitled to collect attorney's fees.[4] However, on appeal Defendants-Appellants[5] abandoned this argument. (See Defs.'s Appeal Br. at 8.) Instead, Defendants-Appellants presented two issues: (1) whether their Rule 68 offer encompassed attorney's fees, and (2) whether there was a requirement that the amount of attorney's fees awarded to a prevailing plaintiff be proportionate to the damages ultimately recovered on a plaintiff's substantive claims. See Barbour II, 700 F.3d at 633.

The merits of Defendants-Appellants' first argument, the argument that the Rule 68 offer encompassed attorney's fees, were largely disposed of by the Second Circuit by reference to the Supreme Court's dispositive ruling in Marek v. Chesny, 473 U.S. 1 (1985). In this respect, the parties here are in agreement that the first argument was "for the most part, straightforward." (See Pls.'s Reply at 3.) However, within this first argument, Defendants-Appellants presented a novel issue that had not been raised at the district court level.  Instead of basing their argument on the wording of the Rule 68 offer of judgment, which had been addressed by the trial court, they looked to the Plaintiffs' Complaint. (See Defs.'s Appeal Br. at 11.)  Specifically, they noted that included in the Complaint's "claims" for damages, the Plaintiffs claimed "costs and expenses." (Id.)  Thus, Defendants-Appellants argued, their offer to settle "all claims" in the Rule 68 offer of judgment must have included costs and legal expenses. (Id.) This new interpretation required Plaintiffs' counsel not only to address the merits of the claim by engaging

---

[4] Defendants contended before this Court that because several of Plaintiffs' original claims were voluntarily discontinued, Plaintiffs could not be prevailing parties and thus were not entitled to fees under § 1988. This Court rejected Defendants' argument, finding that "settlement in Plaintiffs' favor is sufficient to establish Plaintiffs as the prevailing parties in this action," Barbour I, 788 F.Supp.2d at 221 (citing Farrar v. Hobby, 506 U.S. 103, 111 (1992), and that "Plaintiffs dismissed their non-viable claims in the interest of efficiency," id. Defendants did not pursue this argument on appeal.

[5] The Defendants were represented on their appeal by Mr. Maria. They appealed from this Court's award of attorney's fees and costs to Plaintiffs attorneys under § 1988. For the sake of clarity, Defendants will be referred to as "Defendants-Appellants" when discussing the arguments they made, through Mr. Maria, in the course of their appeal.

in legal research, but also to review the record carefully to establish that it had not been adequately raised below to be heard on appeal.  (See Spiegel Decl. ¶ 5; Korenbaum Decl. Ex. 3.)

What's more, the second argument raised by Defendants-Appellants was much more convoluted and, thus, required a significant amount of new legal research on the part of Plaintiffs' attorneys.  The Defendants-Appellants argued that the attorney's fee award was "unconscionably disproportionate" as to allow no award of legal fees, (see Defs.'s Appeal Br. at 16), and also argued that the "relief obtained herein represents limited success." (Id. at 17.) "Limited degree of success" is a factor that may be considered in reducing fee applications. See, e.g., Millea v. Metro-North R.R., 658 F.3d 154, 168 (2d Cir. 2011) ("Hours spent on unsuccessful fee-shifting claims, like those spent on claims wholly ineligible for fee-shifting, must be excluded from the reasonable hours spent on the case when calculating the lodestar."). "Disproportionality," however, is not. See City of Riverside v. Rivera, 477 U.S. 561, 581 (1986) ("In the absence of any indication that Congress intended to adopt a strict rule that attorney's fees under § 1988 be proportionate to the damages recovered, we decline to adopt such a rule ourselves."); Vazquez v. Ranieri Cheese Corp., 07 Civ. 464, 2011 WL 554695, at *4 (E.D.N.Y. Feb. 7, 2011) ("[C]ourts have rejected the notion that fee awards should be proportionately tied to a plaintiff's recovery.").

Defendants-Appellants' brief was not clear on what claims they were pursuing. (Compare Defs.'s Appeal Br. at 16 ("The relief obtained herein represents limited success.") with id. at 18 ("The district court failed to exercise discretion in the grant of this award that is nine times greater than the inconsequential recovery accepted by means of a Rule 68 offer.")) This lack of clarity left Plaintiffs with no option but to research and prepare both possible theories.  Further, the second argument of "proportionality" was complicated by the fact that it was not properly

preserved for appeal. <u>See</u> <u>Barbour II</u>, 700 F.3d at 634 (finding that the issue of proportionality of the fee award was not an argument that was preserved for appeal). Therefore, in addition to legal research, this argument also required a careful review of the record to ensure that Defendants had not adequately preserved the argument below to be heard on appeal. (<u>See</u> Pls.'s Reply at 5.)

Further, the Defendants here question why the Plaintiffs should be awarded fees for hours spent on research that was not ultimately included in Plaintiffs' appellate brief. (<u>See</u> Defs.'s Opp. at 6.) The record shows, however, that such time spent by Plaintiffs was done on research necessitated by Defendants-Appellants' briefing. (<u>See, e.g.</u>, Pls.'s Reply at 6 (Defendants-Appellants' briefing stated that the "nominal amount recovered by plaintiff was a settlement resulting from a Rule 68 Offer, not from a low damage award," and "this statement required [Plaintiffs'] counsel to research whether or not there was a relevant distinction between acceptance of a Rule 68 offer and a low damage award, insofar as it affected the consideration of degree of success, and to read the case cited to determine whether it had any bearing on the issues being appealed. It did not.")).

Finally, the Court finds the Defendants' accusation that Plaintiffs' attorneys have spent excessive time working on this matter somewhat disingenuous, given Defendants' consistent refusal to engage in settlement negotiations in this case.[6] <u>See</u> <u>Barbour I</u>, 788 F.Supp.2d at 224 ("Defendants could have avoided liability for the bulk of the attorneys' fees for which they now find themselves liable by making a reasonable settlement offer in a timely manner.") (internal

---

[6] The Defendants' unwillingness to settle continued through the instant motion. Though Mr. Korenbaum reached out both to Defendants' prior counsel and the incoming counsel to reach a resolution on the matter of attorney's fees, he states that he has "never heard from anyone representing the City of White Plains regarding the issue of settlement." (<u>See</u> Reply Decl. of Scott A. Korenbaum in Supp. of Mot. for Post-J. Att'y's Fees & Costs ("Korenbaum Reply Decl.") ¶ 7, Mar. 4, 2013, ECF No. 88.)

citations omitted); <u>Barbour II</u>, 700 F.3d at 632-33 ("Defendants steadfastly maintain[ed] that they were unwilling to settle the case.").

In sum, the hours billed by Mr. Spiegel and Mr. Korenbaum in preparation for the Second Circuit appeal were not "excessive," <u>Hensley</u>, 461 U.S. at 434. The Defendants' characterization of the appeal as "not complicated" is, upon this Court's review of the appellate record, misleading. Rather, Defendants-Appellants laid out legal arguments that were not raised at the trial court level, necessitating that Plaintiffs' attorneys conduct extensive legal research. Therefore, Plaintiffs' hours billed need not be limited or excluded for this reason from the attorney's fee award.

### 2. *Whether Plaintiffs' Attorneys Submitted Duplicative Time Entries*

Defendants also contend that Mr. Spiegel and Mr. Korenbaum unnecessarily duplicated each other's work, and that therefore their fees should be discounted. (<u>See</u> Defs.'s Opp. at 3 (citing <u>Williams v. New York City Hous. Auth.</u>, 975 F.Supp. 317, 326-27 (S.D.N.Y. 1997) ("It is…proper to reduce a fee request when two or more attorneys have duplicated each other's work, since some of the work was unnecessary and the time claimed thus was unreasonable.").) Mr. Spiegel is a solo practitioner and the retained attorney on this case. In considering the time sheets submitted for review, this Court is mindful that solo practitioners can be affected by time constraints imposed by the circuit court's schedule, and often require assistance in filing the necessary appellate briefs and the joint appendix.

Further, it is not uncommon for parties to recover attorney's fees for the collaboration of multiple attorneys on a case, when the district court decides that such collaboration is appropriate given the scope and complexity of the litigation. <u>See, e.g.</u>, <u>New York State Ass'n for Retarded Children v. Carey</u>, 711 F.2d 1136, 1146 (2d Cir. 1983)("Prevailing parties are not barred as a

matter of law from receiving fees for sending a second attorney to depositions or an extra lawyer into court to observe and assist. Nor are counsel forbidden from receiving fees for background research."); <u>Luca v. County of Nassau</u>, 698 F.Supp.2d 296, 305-07 (awarding attorney's fees and costs to appellate attorneys, including Mr. Korenbaum, who helped lead counsel draft the appellate brief and perform the oral argument on appeal). Reviewing the contemporaneous time sheets for Mr. Spiegel and Mr. Korenbaum with this in mind, the Court finds that the time sheets do not reflect unnecessary duplication of work by those attorneys.

Rather, a review of Plaintiffs' attorneys' contemporaneous time sheets reflect a collaborative work process. For example, Mr. Korenbaum drafted the first version of Plaintiffs' appellate brief between September 7, 2011 and September 22, 2011. (<u>See</u> Pls.'s Reply at 10; Korenbaum Decl., Ex. 1.) After receiving a draft of the brief in early October, Mr. Spiegel made revisions and edits to the draft proposed by Mr. Korenbaum, and wrote a second draft. (<u>See</u> Spiegel Decl., Ex. A.) Mr. Korenbaum revised the brief and performed the oral argument. (<u>See</u> Korenbaum Decl., Ex. 1.)

In support of their charge of duplicative billing, Defendants have identified three instances, totaling 2.5 hours of overlap, where they allege the work of Mr. Spiegel and Mr. Korenbaum were redundant. (<u>See</u> Defs.'s Opp. at 7.) In the first, Defendants note that both Mr. Spiegel and Mr. Korenbaum spent time researching and reviewing the case of <u>Millea v. Metro-North R.R.</u>, 658 F.3d 154 (2d Cir. 2011). (<u>See</u> <u>id.</u>) Mr. Spiegel billed 3.6 hours for research of <u>Millea</u> and similar cases on August 10, 2011, (<u>see</u> Spiegel Decl., Ex. A), and Mr. Korenbaum billed .5 hours for research of <u>Millea</u> on August 8, 2011, (<u>see</u> Korenbaum Decl., Ex. 1). Since both attorneys worked on the writing and preparation of the appellate brief, it is not unreasonable

for them to both to familiarize themselves with <u>Millea</u>, the Second Circuit's then-most recent decision regarding calculation of attorney's fees.

The same logic applies to the second instance of overlap identified by Defendants: both Mr. Spiegel and Mr. Korenbaum spent time researching the legal issue of waiver. (<u>See</u> Defs.'s Opp. at 7.) Mr. Spiegel billed 4.9 hours for legal research on the issue of waiver and revising and editing the brief on November 16, 2011, (<u>see</u> Spiegel Decl., Ex. A), and Mr. Korenbaum billed one hour for legal research on the issue of waiver on November 14, 2011 (<u>see</u> Korenbaum Decl., Ex. 1). Again, since both attorneys worked collaboratively to prepare for the appeal, it is not unreasonable for both attorneys to have reviewed this issue. The issue of waiver, in particular, was an important one for the Plaintiffs' appellate brief. As discussed above, Defendants-Appellants raised several arguments for the first time on appeal. That both attorneys, who were both involved in drafting the appeal and preparing for oral argument, would review this legal issue, does not reflect unnecessary duplication of work.

The Defendants' final instance of duplication, which involved one hour of overlap in which both Mr. Korenbaum and Mr. Spiegel prepared a table of contents and table of authorities, (<u>see</u> Defs.'s Opp. at 7), has been excluded from Mr. Korenbaum's requested fees in the Plaintiffs' reply (<u>see</u> Pls.'s Reply at 11). Since this hour has been withdrawn from the Plaintiffs' attorney's fees request, the Court need not consider whether the hour was duplicative. As to the remaining 1.5 hours of alleged duplication on the part of Messrs. Spiegel and Korenbaum, the Court finds that the contemporaneous time sheets reveal collaboration between the two attorneys, not unnecessary or unreasonable duplication.

3.   *Whether Mr. Spiegel's Billing Entries Are Vague and Non-Descriptive*

Next, the Defendants charge that Mr. Spiegel submitted vague entries that "do not allow the defendants, or the Court, to determine either the nature of the tasks performed, or the reasonableness of the time expended on such tasks." (Defs.'s Opp. at 8.) Specifically, the Defendants charge that Mr. Spiegel used block billing to account for his work on the appeal in this case. "'Block billing' involves combining several tasks into a single entry[.]" G.B. ex rel. N.B. v. Tuxedo Union Free School District, 894 F.Supp.2d 415, 440 (S.D.N.Y. 2010), aff'd 486 Fed. Appx. 954 (2d Cir. 2012). Defendants point to 16.5 hours over five entries submitted by Mr. Spiegel which include the description "draft appellee's brief and legal research," (Spiegel Decl., Ex. A), arguing that "the hours and the cost for the work performed in connection with the appeal must also be reduced to account for such vagueness." (Defs.'s Opp. at 8.)

Block billing, though not forbidden, may make it difficult for a court to "conduct its reasonableness analysis, because a single billing entry might mix tasks that are compensable with those that are not, or mix together tasks that are compensable at different rates." Hnot v. Willis Group Holdings, 01 Civ. 6558 (GEL), 2008 WL 1166309, at *6 (S.D.N.Y. Apr. 7, 2008). Courts in this Circuit therefore may use block billing as a basis for reductions in the attorney's fees "where there was evidence that the hours billed were independently unreasonable or that the block-billing was mixing together tasks that were not all compensable, or not all compensable at the same rate." Id.

Here, it is debatable whether Mr. Spiegel's entries constitute block entries. Though Defendants suggest that "draft appellee's brief" and "legal research" are two separate tasks, it is reasonable to think of those time entries, as the Plaintiffs suggest, as a single large task, the ultimate result of which was appellee's brief. (See Pls.'s Reply at 10.)  However, even if the

13

entries do constitute block billing, there is no evidence that the hours billed were independently unreasonable or that the tasks are compensable at different rates. As discussed above, Mr. Spiegel wrote a second draft of the appellate brief after having reviewed the first draft prepared by Mr. Korenbaum. On the five consecutive days targeted by Defendants, November 7-11, 2011, Mr. Spiegel's time sheets reveal he was engaged in restructuring and redrafting the brief submitted by Mr. Korenbaum. Nor is there any reason to believe that the legal research performed by Mr. Spiegel is compensable at a different rate than brief writing. Both are apparently compensable at the same $625 per hour rate that he is seeking here.

Under the circumstances, the entries seem entirely warranted. To hold otherwise would require a detail in time sheets not required by this Circuit. See Hnot, 2008 WL 1166309, at *6 ("So long as an attorney's records specify the date, the hours expended, and the nature of the work done, they are sufficient.") (internal quotation marks omitted) (citing Carey, 711 F.2d at 1148).

4.   *Whether Hours Billed by Plaintiffs' Attorneys on the Instant Motion Are Reasonable*

Plaintiffs also seek recovery for hours spent in preparation for the instant motion. (See Korenbaum Reply Decl., Ex. 2; Spiegel Reply Decl., Ex. A.) Defendants do not make an objection to such an award, and the Court finds no basis to exclude these hours from an attorney's fees award.

**B.   Whether the Hourly Rate Charged by Mr. Spiegel is Reasonable**

Finally, Defendants charge that Mr. Spiegel's hourly rate of $625 per hour is excessive. (See Defs.'s Opp. at 10.) In Barbour I, this Court found that "after review of Mr. Spiegel's and Mr. Korenbaum's declarations and their appended exhibits, the requested rates [$625 per hour and $450 per hour, respectively] are found to be reasonable and within the range of fees paid to

civil rights attorneys of similar skill and experience in the Southern District of New York." 788 F.Supp.2d at 225.  Mr. Spiegel's hourly rate was not challenged by the Defendants before this Court, nor was it challenged before the Second Circuit, where the $625 per hour rate was affirmed. Barbour II, 700 F.3d at 635.  Despite an increase in his hourly rate over the duration of this litigation, the hourly rate requested by Mr. Spiegel here is the same as the one approved by this Court two years ago and affirmed by the Circuit.  This Court therefore adheres to its previous finding approving the hourly rate of $625 per hour.  Even if the Court were not counseled to do so by the law of the case doctrine, the Court would, upon review of the evidence before it here, again find Mr. Spiegel's hourly rate to be reasonable.

Under the doctrine of the law of the case, "a legal decision made at one stage of the litigation, unchallenged on a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time." North River Insurance Co. v. Philadelphia Reinsurance Corp., 63 F.3d 160, 164 (2d Cir. 1995) (internal citations omitted).  A court should be "loathe" to revisit an earlier decision "in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." Id. at 165 (internal citations omitted).  Given this Court's previous determination as to the reasonableness of Mr. Spiegel's hourly rate and its affirmation by the Second Circuit, the law of the case doctrine suggests approving Mr. Spiegel's requested hourly rate here.

Nevertheless, Defendants rightly note that that Mr. Spiegel's hourly rate, which this Court considered in Barbour I for his performance on a trial level rather than on appeal, exceeds rates awarded to counsel for other plaintiffs in some other recent civil rights cases. See, e.g.,

Finch v. New York State Office of Children and Family Services, 861 F.Supp.2d 145, 154 (S.D.N.Y. 2012) (awarding an experienced civil rights attorney who was a member of a small law firm an hourly rate of $450 per hour); Davis v. City of New York, 10 Civ. 699 (SAS), 2011 WL 4946243, at *5 (S.D.N.Y. Oct. 18, 2011) (approving of a rate of $425 per hour for the plaintiffs' most senior attorney, who had thirty-one years of experience).  Defendants also argue that "rates awarded to experienced civil rights attorneys in the past ten years have ranged from $250 to $600…with average awards increasing over time," Vilkhu v. City of New York, 06 Civ. 2095 (CPS), 2009 WL 1851019, at *4 (E.D.N.Y. June 26, 2009) vacated on other grounds, 372 Fed.Appx. 222 (2d Cir. 2010), and that Mr. Spiegel's requested hourly rate of $625 per hour exceeds "what a reasonable, paying client would be willing to pay," Rozell v. Ross-Holst, 576 F.Supp.2d 527, 544 (S.D.N.Y. 2008) (internal citations omitted).  Finally, they suggest that "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of comparable skill, experience, and reputation." Id.

Given the Defendants' objections, it is appropriate to carefully review the documentation submitted by the Plaintiffs in support of the hourly rate requested by Mr. Spiegel.  Here, as in Barbour I, Mr. Spiegel's hourly rate is supported by declarations of three civil rights attorneys and members of the bar of this Court, Alan H. Levine, Esq., Jonathan C. Moore, Esq., and Robert L. Herbst, Esq., all of whom have personal knowledge of Mr. Spiegel's skills as an attorney. (See Decl. of Michael L. Spiegel in Supp. of Mot. for Att'y's Fees & Costs ("Spiegel Decl. 3/14/11") Exs. D-F, Mar. 14, 2011, ECF No. 59.)

Mr. Levine, a civil rights litigator with 45 years of experience, described Mr. Spiegel, who he has known since 2004, as "an extremely capable civil rights lawyer—one of the finest in

the metropolitan area." (Spiegel Decl. 3/14/11, Ex. D.)  He states that Mr. Spiegel's requested hourly rate of $625 per hour is commensurate with the rates shown to be charged by other attorneys of his skill, reputation and experience and is in line with the prevailing market rate for civil rights attorneys in the Southern District of New York. (See id.)

Mr. Moore, a member of the firm of Beldock, Levine and Hoffman, LLP and experienced civil rights attorney, also supports Mr. Spiegel's requested hourly rate of $625 per hour. (See Spiegel Decl. 3/14/11, Ex. E.)  He notes that Mr. Spiegel's rate is well within the prevailing market rate for attorneys who represent civil rights plaintiffs in the Southern District of New York, noting that his own rate is above that of Mr. Spiegel. (See id.)

Finally, Mr. Herbst of the firm of Giskan, Solotaroff, Anderson and Stewart LLP states that Mr. Spiegel's rate of $625 per hour is lower that his current rate customary hourly rates and is "well within the bounds of hourly rates charged by lawyers of his experience and skills." (See Spiegel Decl. 3/14/11, Ex. F.)

In addition to the declarations of his colleagues and members of the civil rights bar, Mr. Spiegel also put forward a summary of his experience as a civil rights litigator.  This Court noted in Barbour I that Mr. Spiegel, who has litigated approximately 150 civil rights cases, has "extensive experience as a civil rights litigator in this district." Barbour I, 788 F.Supp.2d at 225. Mr. Spiegel has added to that record here to highlight his appellate experience, noting that he has "won every federal civil appeal [he has] taken or defended." (Reply Decl. of Michael L. Spiegel in Supp. of  Post-J. Mot. for Att'y's Fees & Costs ("Spiegel Reply Decl.") 2, Mar. 4, 2013, ECF No. 87 (citing Martinez v. Port Authority, 445 F.3d 158 (2d Cir. 2006), Cameron v. City of New York, 598 F.3d 50 (2d Cir. 2010), and Barbour II, 700 F.3d at 633).)

17

After consideration of the Defendants' attack on Mr. Spiegel's requested rate, the Court rejects it.  Considering the work done by Mr. Spiegel before this Court and before the Second Circuit in this matter, Mr. Spiegel's extensive experience as a civil rights litigator, and the affidavits of three civil rights attorneys with significant experience in the field, this Court confirms his hourly rate to be reasonable. Though the Defendants are right to note that Mr. Spiegel's rate is $25 higher than the range of rates suggested by the Vilkhu case in 2009, that case also held that "average awards increas[e] over time." Vilkhu, 2009 WL 1851019, at *4.  The Court finds that a $625 per hour rate is within the range of hourly rates of civil rights attorneys in the Southern District of New York.  Further, awarding Mr. Spiegel his hourly rate is in line with the function of § 1988 "to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." Rivera, 477 U.S. at 578 (citing Kerr v. Quinn, 692 F.2d 875, 877 (2d Cir. 1982)); see also id. at 575 ("If a citizen does not have the resources, his day in court is denied him; the congressional policy which he seeks to assert and vindicate goes unvindicated; and the entire Nation, not just the individual citizen, suffers.") (internal citation omitted). The Court affirms its previous holding that Mr. Spiegel's hourly rate is reasonable.

### C.  Whether Paralegal Fees, Post-Judgment Costs and Expenses, and Post-Judgment Interest Should Be Awarded

Plaintiffs also seek recovery of paralegal fees in the amount of $1,575.00 for time spent on this litigation post-judgment; post-judgment costs and expenses in the amount of $1,086.32; and post-judgment interest from the date of entry of the amended judgment to the date of payment of the judgment in the amount of $886.78. Defendants do not make an objection to these portions of Plaintiffs' recovery, and thus Plaintiffs' request for paralegal fees, post-judgment costs and expenses, and post-judgment interest is granted.

IV.     **CONCLUSION**

Review of the contemporaneous time records of Mr. Spiegel and Mr. Korenbaum reveals that the time expended by Plaintiffs' counsel in preparing for appeal and the instant motion was reasonable, and the hourly rates requested by the two attorneys are within the range of rates paid to civil rights lawyers in the Southern District of New York of similar skill and experience.

Therefore, Plaintiffs are awarded a total of $105,898.10 as attorney's fees and costs as prevailing parties on appeal and post-judgment interest. Plaintiffs' attorney Mr. Spiegel is awarded $58,250.00 and Plaintiffs' attorney Mr. Korenbaum is awarded $44,100.00. Plaintiffs are also awarded paralegal fees in the amount of $1,575.00 and post-judgment costs and expenses in the amount of $1,086.32. Post-judgment interest is awarded in the amount of $886.78.

SO ORDERED.

Dated:  New York, New York
        October 4, 2013


                                         _____/s/_____
                                         Robert P. Patterson, Jr.
                                         United States District Judge


*Counsel for Plaintiffs:*

**Michael L Spiegel**
The Law Offices of Michael L. Spiegel
11 Park Place, Suite 914
New York, NY 10007
(212) 587 8558
Fax: (212) 658 9480
Email: mikespieg@aol.com

**Scott A. Korenbaum**
Scott A. Korenbaum, Esq.
11 Park Place, Suite 914
New York, NY 10007
212-587-0018
Fax: 212-658-9480
Email: s.korenbaum@comcast.net

*Counsel for Defendants:*

**Peter Alexander Meisels**
Wilson Elser,Moskowitz Edelman & Dicker LLP(White Plains)
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000
Fax: (914) 323-7001
Email: peter.meisels@wilsonelser.com